(Slip Opinion) OCTOBER TERM, 2008 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOBBY, WARDEN *v.* BIES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 08–598.   Argued April 27, 2009—Decided June 1, 2009

In *Atkins* v. *Virginia*, 536 U. S. 304, this Court held that the Eighth Amendment bars execution of mentally retarded offenders. Prior to *Atkins,* mental retardation merited consideration as a mitigating factor, but did not bar imposition of the death penalty. See *Penry* v. *Lynaugh*, 492 U. S. 302. Nearly a decade before *Atkins,* respondent Bies was tried and convicted in Ohio of the aggravated murder, kidnaping, and attempted rape of a ten-year-old boy. Instructed at the sentencing stage to weigh mitigating circumstances (including evidence of Bies' mild to borderline mental retardation) against aggravating factors (including the crime's brutality), the jury recommended a death sentence, which the trial court imposed. Ohio's Court of Appeals and Supreme Court affirmed the conviction and sentence, each concluding that Bies' mental retardation was entitled to "some weight" as a mitigating factor, but that the aggravating circumstances outweighed the mitigating circumstances. Bies then filed an unsuccessful petition for state postconviction relief, contending for the first time that the Eighth Amendment prohibits execution of a mentally retarded defendant. Soon after Bies sought federal habeas relief, this Court decided *Atkins*. The opinion left to the States the task of developing appropriate ways to determine when a person claiming mental retardation would fall within *Atkins*' compass. Ohio heeded *Atkins*' call in *State* v. *Lott*. The District Court then stayed Bies' federal habeas proceedings so that he could present an *Atkins* claim to the state postconviction court. Observing that Bies' mental retardation had not previously been established under the *Atkins-Lott* framework, the state court denied Bies' motion for summary judgment and ordered a full hearing on the *Atkins* claim. Rather than proceeding with that hearing, Bies returned to federal court, ar-

guing that the Double Jeopardy Clause barred the State from reliti-
gating the mental retardation issue. The District Court granted the
habeas petition, and the Sixth Circuit affirmed. Relying on *Ashe* v.
*Swenson*, 397 U. S. 436, the Court of Appeals determined that all re-
quirements for the issue preclusion component of the Double Jeop-
ardy Clause were met in Bies' case. It concluded, *inter alia*, that the
Ohio Supreme Court, on direct appeal, had decided the mental retar-
dation issue under the same standard that court later adopted in
*Lott*, and that the state court's recognition of Bies' mental state had
been necessary to the death penalty judgment. When the Sixth Cir-
cuit denied the State's petition for rehearing en banc, a concurring
judge offered an alternative basis for decision. He opined that, under
*Sattazahn* v. *Pennsylvania*, 537 U. S. 101, jeopardy attaches once a
capital defendant is "acquitted" based on findings establishing an en-
titlement to a life sentence; reasoning that the Ohio courts' mental
retardation findings entitled Bies to a life sentence, he concluded that
the Double Jeopardy Clause barred any renewed inquiry into Bies'
mental state.

*Held:* The Double Jeopardy Clause does not bar the Ohio courts from
conducting a full hearing on Bies' mental capacity. Pp. 7–11.

   (a) The alternative basis for decision offered by the concurring
opinion at the Sixth Circuit's rehearing stage is rejected. The State
did not "twice put [Bies] in jeopardy," U. S. Const., Amdt. 5, in the
core constitutional sense. *Sattazahn* offers Bies no aid, for there was
no acquittal here. Bies' jury voted to impose the death penalty. At
issue is his attempt to vacate that sentence, not an effort by the State
to retry him or to increase his punishment. Nor did the state courts'
mental retardation determinations entitle Bies to a life sentence. At
the time of his sentencing and direct appeal, *Penry*, not *Atkins*, was
the guiding decision, and the dispositive issue was whether the miti-
gating factors were outweighed by the aggravating circumstances be-
yond a reasonable doubt. Pp. 7–8.

   (b) The issue preclusion doctrine, on which the Sixth Circuit panel
primarily relied, does not bar a full airing of the issue whether Bies
qualifies as mentally retarded under *Atkins* and *Lott*. The doctrine
bars relitigation of issues actually determined and necessary to the
ultimate outcome of a prior proceeding. Initially, it is not clear that
the issue of Bies' mental retardation was actually determined under
the *Lott* test at trial or on direct appeal. Nor did the State concede
that Bies would succeed under *Atkins* and *Lott*, which had not then
been decided. More fundamental, it is clear that the state courts'
statements regarding Bies' mental capacity were not necessary to the
judgments affirming his death sentence. Instead, those determina-
tions cut against the ultimate outcome. In holding otherwise, the

Syllabus

Sixth Circuit conflated a determination necessary to the bottom-line judgment with a subsidiary finding that, standing alone, is not outcome determinative. The Sixth Circuit also erred in relying on *Ashe*'s statement: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U. S., at 443. Bies' case does not involve the kind of "ultimate fact" addressed in *Ashe.* There, the State was precluded from trying Ashe for robbing a poker player because he had already been acquitted of robbing a different player in the same poker game, and the acquittal was based on a determination that Ashe was not a participant in the poker game robbery. Bies, in contrast, was not acquitted, and determinations of his mental capacity were not necessary to the ultimate imposition of the death penalty. Moreover, even if the core issue preclusion requirements had been met, an exception to the doctrine's application would be warranted due to the intervening *Atkins* decision. Mental retardation as a mitigator and mental retardation under *Atkins* and *Lott* are discrete legal issues. One difference is that mental retardation, urged as a mitigating factor, may instead "enhance the likelihood that [a jury will find] the aggravating factor of future dangerousness." *Atkins* 536 U. S., at 521. This reality explains why prosecutors, pre-*Atkins*, had little incentive to contest retardation evidence. Because the change in law substantially altered the State's incentive to contest Bies' mental capacity, applying preclusion would not advance the equitable administration of the law. The federal courts' intervention in this case derailed the state-court proceeding. Recourse first to Ohio's courts is what this Court envisioned in remitting to the States responsibility for implementing *Atkins*. The State acknowledges that Bies is entitled to such recourse, but rightly seeks a full and fair opportunity to contest his plea under the *Atkins* and *Lott* precedents. Pp. 8–11.

519 F. 3d 324, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–598

DAVID BOBBY, WARDEN, PETITIONER *v.*
MICHAEL BIES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 1, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

In *Atkins* v. *Virginia*, 536 U. S. 304 (2002), this Court held that the Eighth Amendment's prohibition of "cruel and unusual punishments" bars execution of mentally retarded offenders. Prior to *Atkins*, the Court had determined that mental retardation merited consideration as a mitigating factor, but did not bar imposition of the death penalty. See *Penry* v. *Lynaugh*, 492 U. S. 302 (1989).

In 1992, nearly a decade before the Court's decision in *Atkins*, respondent Michael Bies was tried and convicted in Ohio of the aggravated murder, kidnaping, and attempted rape of a ten-year-old boy. Instructed at the sentencing stage to weigh mitigating circumstances (including evidence of Bies' mild to borderline mental retardation) against aggravating factors (including the brutality of the crime), the jury recommended a sentence of death, which the trial court imposed. Ohio's appellate courts affirmed the conviction and sentence. The Ohio Supreme Court, in its 1996 opinion on direct review, observed that Bies' "mild to borderline mental retardation merit[ed] some weight in mitigation," but concluded that

"the aggravating circumstances outweigh[ed] the mitigating factors beyond a reasonable doubt." *State* v. *Bies*, 74 Ohio St. 3d 320, 328, 658 N. E. 2d 754, 761–762.

After this Court decided *Atkins*, the Ohio trial court ordered a full hearing on the question of Bies' mental capacity. The federal courts intervened, however, granting habeas relief to Bies, and ordering the vacation of his death sentence. Affirming the District Court's judgment, the Sixth Circuit reasoned that the Ohio Supreme Court, in 1996, had definitively determined, as a matter of fact, Bies' mental retardation. That finding, the Court of Appeals concluded, established Bies' "legal entitlement to a life sentence." *Bies* v. *Bagley*, 519 F. 3d 324, 334, n. 6 (CA6 2008). Therefore, the Sixth Circuit ruled, the Double Jeopardy Clause of the Federal Constitution barred any renewed inquiry into the matter of Bies' mental state.

We reverse the judgment of the Court of Appeals. The Sixth Circuit, in common with the District Court, fundamentally misperceived the application of the Double Jeopardy Clause and its issue preclusion (collateral estoppel) component.[1] First, Bies was not "twice put in jeopardy." He was sentenced to death, and Ohio sought no further prosecution or punishment. Instead of "serial prosecutions by the government[,] this case involves serial efforts by the defendant to vacate his capital sentence." *Bies* v. *Bagley*, 535 F. 3d 520, 531–532 (CA6 2008) (Sutton, J., dissenting from denial of rehearing en banc) (internal quotation marks omitted). Further, mental retardation for purposes of *Atkins*, and mental retardation as one mitigator to be weighed against aggravators, are discrete issues. Most grave among the Sixth Circuit's misunderstandings, issue

––––––––––

[1] "[R]eplac[ing] a more confusing lexicon," the term "issue preclusion," in current usage, "encompasses the doctrines [earlier called] 'collateral estoppel' and 'direct estoppel.'" *Taylor* v. *Sturgell*, 553 U. S. ___, ___, n. 5 (2008) (slip op., at 9, n. 5).

preclusion is a plea available to prevailing parties. The doctrine bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding. The Ohio courts' recognition of Bies' mental state as a mitigating factor was hardly essential to the death sentence he received. On the contrary, the retardation evidence cut against the final judgment. Issue preclusion, in short, does not transform final judgment losers, in civil or criminal proceedings, into partially prevailing parties.

I

For his part in brutally causing the death of a ten-year-old boy, Bies was convicted by an Ohio jury of attempted rape, kidnaping, and aggravated murder with three death penalty specifications. App. 85; Ohio Rev. Code Ann. §2929.04(A)(3), (7) (Lexis 2006).

At sentencing, Bies presented testimony from clinical psychiatrist Donna E. Winter, who had evaluated him at the court's order during the guilt phase and again before the mitigation hearing. App. 191, 202. Bies did not qualify for a plea of not guilty by reason of insanity, Dr. Winter concluded, because he knew the difference between right and wrong at the time of the offense. *Id.*, at 36, 51, 198–200. Bies' IQ, she further reported, fell in the 65–75 range, *id.*, at 211–212, indicating that he is "mildly mentally retarded to borderline mentally retarded," *id.*, at 20–21, 32, 199–200, 213. Dr. Winter also observed: "[Bies] goes about the community, unassisted [and] carries out the activities of daily life fairly independently." *Id.*, at 199. The State responded to Bies' mitigating evidence by emphasizing the brutality of the murder and the risk of Bies' future dangerousness. Instructed to weigh the mitigating circumstances against aggravating factors, the jury recommended a death sentence, which the trial court imposed. *Id.*, at 88–89.

The Ohio Court of Appeals and Supreme Court each

independently reviewed the evidence and affirmed. *Id.*, at 84–108; *Bies*, 74 Ohio St. 3d 320, 658 N. E. 2d 754. Neither court devoted detailed attention to the issue of retardation. Both concluded that Bies' mild to borderline mental retardation merited "some weight" in mitigation, as did his youth and lack of a criminal record. App. 105–106; 74 Ohio St. 3d, at 328, 658 N. E. 2d, at 762. The aggravating circumstances, each court found, overwhelmed the mitigating circumstances beyond a reasonable doubt. App. 106; 74 Ohio St. 3d, at 328, 658 N. E. 2d, at 762. We denied Bies' petition for a writ of certiorari. *Bies* v. *Ohio*, 517 U. S. 1238 (1996).

Bies then filed a petition for state postconviction relief, contending for the first time that the Eighth Amendment to the Federal Constitution prohibits execution of a mentally retarded defendant. The trial court agreed that Bies was "mildly mentally retarded," but concluded that, under then-governing Ohio precedent, "a mildly mentally retarded defendant may be [p]unished by execution." App. 153. The Ohio Court of Appeals affirmed the judgment, *id.*, at 175–176, and the Ohio Supreme Court dismissed Bies' appeal without an opinion, *State* v. *Bies*, 87 Ohio St. 3d 1440, 719 N. E. 2d 4 (1999) (Table).

Bies next filed a federal habeas petition in the United States District Court for the Southern District of Ohio. Soon after that filing, this Court held, in *Atkins* v. *Virginia*, 536 U. S., at 321, that the Eighth Amendment prohibits execution of mentally retarded offenders. Our opinion did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation "will be so impaired as to fall [within *Atkins*' compass]." We "le[ft] to the States the task of developing appropriate ways to enforce the constitutional restriction." *Id.*, at 317 (internal quotation marks omitted).

Ohio heeded *Atkins*' call six months later in *State* v.

*Lott*, 97 Ohio St. 3d 303, 2002–Ohio–6625, 779 N. E. 2d 1011 *(per curiam)*. At an *Atkins* hearing, the Ohio Supreme Court held, a defendant must prove: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." 97 Ohio St. 3d, at 305, 779 N. E. 2d, at 1014. "IQ tests," the court stated, "are one of the many factors that need to be considered, [but] they alone are not sufficient to make a final determination [of retardation]." *Ibid.* The court also announced "a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." *Ibid.*

The District Court stayed its proceedings on Bies' federal habeas petition while Bies presented an *Atkins* claim to the state postconviction court. App. to Pet. for Cert. 83a. Bies there moved for summary judgment, arguing that the record established his mental retardation, and that the State was "precluded and estopped" from disputing it. *Id.*, at 104a. The state court recognized that *Atkins* and *Lott* had materially changed the significance of a mental retardation finding. The court observed that mental retardation had not previously been established under the *Atkins-Lott* framework; given those precedent-setting decisions, the court concluded, "there is a serious issue as to Mr. Bies' mental status." App. to Pet. for Cert. 104a. Accordingly, the court denied summary judgment and ordered a full hearing on the *Atkins* claim.

Rather than proceeding with the hearing directed by the state court, Bies returned to the Federal District Court. He argued that the Fifth Amendment's Double Jeopardy Clause, made applicable to the States by the Fourteenth Amendment, barred the State from relitigating the issue of his mental condition. App. to Pet. for Cert. 81a. The District Court granted the habeas petition and ordered vacation of Bies' death sentence. *Id.*, at 68a.

The Court of Appeals affirmed. 519 F. 3d 324, 342. It concluded that Bies' case was "controlled by" *Ashe* v. *Swenson*, 397 U. S. 436 (1970), which held that the doctrine of issue preclusion "is embodied in the Fifth Amendment guarantee against double jeopardy." 519 F. 3d, at 332 (quoting 397 U. S., at 445). The Court of Appeals found all requirements for issue preclusion met in Bies' case. It concluded, *inter alia*, that the Ohio Supreme Court, in resolving Bies' direct appeal, had decided the issue of Bies' mental retardation under the same standard later adopted in *Lott*. 519 F. 3d, at 336. Further, the Court of Appeals held, the state court's recognition that Bies qualified as mentally retarded had been necessary to the judgment imposing the death sentence. "[D]etermining which mitigating factors are actually present," the court reasoned, "is a necessary first step to determining whether those factors outweigh the aggravating circumstances." *Id.*, at 337.

The Court of Appeals denied the State's petition for rehearing en banc. 535 F. 3d 520. Judge Clay, concurring, opined that *Sattazahn* v. *Pennsylvania*, 537 U. S. 101 (2003), provided an additional, independent basis for affirmance. 535 F. 3d, at 523–524. Under that decision, he noted, jeopardy attaches, and relitigation is precluded, once a judge or jury has "acquitted" a capital defendant "by entering findings sufficient to establish legal entitlement to [a] life sentence." *Id.*, at 522 (quoting *Sattazahn*, 537 U. S., at 108–109). In Bies' case, Judge Clay concluded, the Ohio courts' determination of mental retardation "entitle[d]" Bies to a life sentence, and thus the Double Jeopardy Clause barred the State from disputing the issue of Bies' mental retardation. 535 F. 3d, at 523–524.

Judge Sutton dissented from the denial of rehearing en banc. *Sattazahn* was inapposite, he maintained, because Bies was never "twice put in jeopardy." 535 F. 3d, at 531 (internal quotation marks omitted). Nor, in Judge Sut-

ton's view, did *Ashe* support the panel's decision, for issue preclusion did not come into play in Bies' case. 535 F. 3d, at 532.

We granted certiorari, 555 U. S. ___ (2009), and now reverse.

## II
### A

The alternative basis for decision offered at the rehearing stage in the Court of Appeals can be rejected without extensive explanation. The State did not "twice put [Bies] in jeopardy," U. S. Const., Amdt. 5, in the core constitutional sense. "[T]he touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'" *Sattazahn*, 537 U. S., at 109. *Sattazahn* offers Bies no aid. In that case, the defendant's first capital jury had deadlocked at the penalty phase, and the court, as required by state law, entered a life sentence. *Id.*, at 104–105. This Court held the Double Jeopardy Clause did not bar the State's request for the death penalty at the defendant's retrial, noting that "neither the judge nor the jury had acquitted the defendant in his first . . . proceeding by entering findings sufficient to establish legal entitlement to the life sentence." *Id.*, at 108–109 (internal quotation marks omitted).

Here, as in *Sattazahn*, there was no acquittal. Bies' jury voted to impose the death penalty. At issue now is Bies' "second run at vacating his death sentence," 535 F. 3d, at 531 (Sutton, J., dissenting from denial of rehearing en banc), not an effort by the State to retry him or to increase his punishment.

Nor did any state-court determination of Bies' mental retardation "entitl[e]" him to a life sentence. Cf. *id.*, at 523 (Clay, J., concurring in denial of rehearing en banc). At the time Bies was sentenced and on direct appeal, *Penry*, not *Atkins*, was this Court's guiding decision.

Under *Penry*, no single mitigator or aggravator was determinative of the judgment. Instead, the dispositive issue, correctly comprehended by the Ohio courts, was whether "the aggravating circumstances outweigh[ed] the mitigating factors beyond a reasonable doubt." *Bies*, 74 Ohio St. 3d, at 328, 658 N. E. 2d, at 762.

### B

The Court of Appeals panel relied primarily on the doctrine of issue preclusion, recognized in *Ashe* to be "embodied in" the Double Jeopardy Clause. 397 U. S., at 445. Preclusion doctrine, however, does not bar a full airing of the issue whether Bies qualifies as mentally retarded under *Atkins* and *Lott*.

Issue preclusion bars successive litigation of "an issue of fact or law" that "is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." Restatement (Second) of Judgments §27 (1980) (hereinafter Restatement). If a judgment does not depend on a given determination, relitigation of that determination is not precluded. *Id.*, §27, Comment *h*. In addition, even where the core requirements of issue preclusion are met, an exception to the general rule may apply when a "change in [the] applicable legal context" intervenes. *Id.*, §28, Comment *c*.

As an initial matter, it is not clear from the spare statements of the Ohio appellate courts that the issue of Bies' mental retardation under the *Lott* test was actually determined at trial or during Bies' direct appeal. No court found, for example, that Bies suffered "significant limitations in two or more adaptive skills." *Lott*, 97 Ohio St. 3d, at 305, 779 N. E. 2d, at 1014. Nor did the State concede that Bies would succeed under *Atkins* and *Lott*, which had not then been decided.

More fundamental, it *is* clear that the courts' statements regarding Bies' mental capacity were not necessary to the

judgments affirming his death sentence. A determination ranks as necessary or essential only when the final outcome hinges on it. See 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4421, p. 543 (2d ed. 2002). "Far from being necessary to the judgment, the Ohio courts' mental-retardation findings cut against it— making them quintessentially the kinds of rulings not eligible for issue-preclusion treatment." 535 F. 3d, at 533 (Sutton, J., dissenting from denial of rehearing en banc).

In finding the state court's determination "necessary to [the] judgment," 519 F. 3d, at 342, the Court of Appeals panel reasoned that the Ohio courts determined Bies' mental capacity pursuant to their "mandatory duty" to weigh the aggravating and mitigating circumstances. *Id.*, at 338. "[W]eighing [aggravators against mitigators]," the panel explained, "could not have occurred unless the court first determined what to place on either side of the scale." *Ibid.* This reasoning conflates a determination necessary to the bottom-line judgment with a subsidiary finding that, standing alone, is not outcome determinative. Issue preclusion cannot transform Bies' loss at the sentencing phase into a partial victory.

For the same reason, the Court of Appeals erred in its repeated reliance on the following passage in *Ashe:* "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 519 F. 3d, at 331–333 (quoting 397 U. S., at 443). Bies' case does not involve an "ultimate fact" of the kind our decision in *Ashe* addressed. There, the State sought to try Ashe for robbing a poker player even though a jury had already acquitted him of robbing a different player in the same poker game. The State's second attempt was precluded, we held, because the first jury had based its verdict of acquittal upon a determination that Ashe was not one of the participants in the poker game robbery. *Id.*, at

445. Bies, in contrast, was not acquitted—and, as already observed, determinations of his mental capacity were not necessary to the ultimate imposition of the death penalty.[2]

Moreover, even if the core requirements for issue preclusion had been met, an exception to the doctrine's application would be warranted due to this Court's intervening decision in *Atkins*. Mental retardation as a mitigator and mental retardation under *Atkins* and *Lott* are discrete legal issues. The *Atkins* decision itself highlights one difference: "[R]eliance on mental retardation as a mitigating factor can be a two-edged sword that may enhance the likelihood that the aggravating factor of future dangerousness will be found by the jury." 536 U. S., at 321. This reality explains why prosecutors, pre-*Atkins*, had little incentive vigorously to contest evidence of retardation. See App. 65 (excerpt from prosecutor's closing argument describing as Bies' "[c]hief characteristic" his "sensitivity to any kind of frustration and his rapid tendency to get enraged"); *id.*, at 39–54 (cross-examination of Bies' expert witness designed to emphasize Bies' dangerousness to others). Because the change in law substantially altered the State's incentive to contest Bies' mental capacity, applying preclusion would not advance the equitable administration of the law. See Restatement §28, Comment *c*.

The federal courts' intervention in this case derailed a state trial court proceeding "designed to determine whether Bies ha[s] a successful *Atkins* claim." 535 F. 3d,

_____

[2] This case, we note, is governed by the Antiterrorism and Effective Death Penalty Act of 1996. Bies plainly fails to qualify for relief under that Act: The Ohio courts' decisions were not "contrary to, or . . . an unreasonable application of, clearly established Federal law," 28 U. S. C. §2254(d)(1), and were not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," §2254(d)(2). See also 535 F. 3d, at 534 (CA6 2008) (Sutton, J., dissenting from denial of rehearing en banc).

Opinion of the Court

at 534 (Sutton, J., dissenting from denial of rehearing en banc). Recourse first to Ohio's courts is just what this Court envisioned in remitting to the States responsibility for implementing the *Atkins* decision. The State acknowledges that Bies is entitled to such recourse, but it rightly seeks a full and fair opportunity to contest his plea under the postsentencing precedents set in *Atkins* and *Lott*.

*        *        *

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*