

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0088-10

### RICKIE DAWSON YORK, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

**COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.**

I concur in the Court's judgment. I cannot join the majority opinion because I do not

think that this case presents an issue of collateral estoppel.[1] Appellant relies solely upon the

collateral estoppel doctrine embodied in the Double Jeopardy Clause of the United States

---

[1] If this case did raise a collateral estoppel issue, I would agree that our unanimous opinion in *Murphy v. State*, 239 S.W.3d 791 (Tex. Crim. App. 2007), resolves the question of whether that doctrine applies in the context of a pretrial motion to suppress. As we held in *Murphy*, it does not.

Constitution as set out in *Ashe v. Swenson*.[2]   That constitutional collateral-estoppel doctrine

---

[2] 397 U.S. 436 (1970).  Specifically, appellant does not rely upon any federal common-law doctrine of issue preclusion or any common-law civil doctrine of issue preclusion as set out in the RESTATEMENT (SECOND) OF JUDGMENTS.  Although the Supreme Court recently quoted from section 27 of the Restatement in *Bobby v. Bies*, ___ U.S. ___, 129 S.Ct. 2145, 2152 (2009), it did so in connection with rejecting a Double Jeopardy claim.  In *Bies*, the Supreme Court held that "the doctrine of issue preclusion, recognized in *Ashe* to be 'embodied in' the Double Jeopardy Clause" did not bar the State from relitigating the question of the defendant's mental retardation even though the state supreme court had, in the direct appeal, found that the defendant had mild to borderline mental retardation.  First, the defendant was not "twice placed in jeopardy" because he was convicted in the first trial, not acquitted.  *Id.* at 2149.  Second, that factual finding of mild mental retardation was not "essential" to the first judgement. *Id.* at 2152 ("If a judgment does not depend on a given determination, relitigation of that determination is not precluded.").  Third, even if it had been essential, the type of issue preclusion the defendant sought would not be conclusive because the law had changed in the meantime.  Fourth, Bies's case "does not involve an 'ultimate fact' of the kind our decision in *Ashe* addressed" and Bies was not acquitted in the first trial based on that specific fact. *Id*. at 2153.  Fifth, even if the defendant could invoke the Restatement type of issue preclusion, the Court would not apply it in that case because the law had changed in the meantime.  *Id.* ("Moreover, even if the core requirements for issue preclusion had been met, an exception to the doctrine's application would be warranted due to this Court's intervening decision in *Atkins*.").  But, of course, if the *Ashe v. Swenson* type of "ultimate factual finding" collateral estoppel under the Double Jeopardy Clause *did* apply, then that fact could not be relitigated even if the law had changed.  The Double Jeopardy Clause would forbid it.

Because appellant invoked only the collateral-estoppel doctrine set out in *Ashe v. Swenson*, we need not address common-law or Restatement issue-preclusion doctrines.  Those non-constitutional, common-law civil doctrines are frequently held to be inapplicable in criminal cases because "more fundamental concerns here are the enforcement of criminal laws designed to protect communities, and the public interest in the prosecution of crimes against persons. If these concerns are to be considered, collateral estoppel 'cannot be applied [to criminal cases] in quite the same way as civil cases.'" *United States v. McMillan*, 898 A.2d 922, 935 (D.C. 2006) (quoting *New York v. Plevy*, 417 N.E.2d 518, 521 (1980)); *see also New York v. Hilton*, 745 N.E.2d 381, 382 (2000) (collateral estoppel principles "are not to be liberally applied in criminal cases"); *Pinkney v. Keane,* 920 F.2d 1090, 1096 (2d Cir.1990) (noting that "collateral estoppel is less liberally applied in criminal cases than in civil actions, because 'considerations peculiar to the criminal process may outweigh the need to avoid repetitive litigation'").  As the Supreme Court has explained in rejecting the application of nonmutual collateral estoppel,

> "[T]he purpose of a criminal court is . . . to vindicate the public interest in the enforcement of the criminal law while at the same time safe-guarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil

depends upon the resolution of specific, ultimate historical facts in one proceeding that

cannot be relitigated in a new proceeding.[3]  Collateral estoppel involves Sgt. Friday facts–the

"who, why, where, when, what" facts of a case.[4]  Here, the trial judge in the county court

case simply made an erroneous legal ruling.  That ruling ended the first case, and double

_____

cases and we are thus inclined to reject, at least as a general matter, a rule that
would spread the effect of an erroneous acquittal to all those who participated in a
particular criminal transaction."

*Standefer v. United States*, 447 U.S. 10, 25 (1980) (quoting *United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir.1979) (en banc)).

[3] *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). In *Ashe*, the prosecution charged that the defendant was one of several men who had robbed a group of six poker players. After Ashe was tried and acquitted of robbing one of the players, the state tried him for robbing a different player. The second prosecution, based on "substantially stronger" testimony from "witnesses [who] were for the most part the same," resulted in a conviction. *Id.* at 439-40.  The Supreme Court concluded that the second prosecution was constitutionally prohibited. Because the "single rationally conceivable issue in dispute before the jury" at the first trial was whether Ashe was one of the robbers, the Court held that the jury's acquittal collaterally estopped the State from trying Ashe for robbing a different player during the same criminal episode. *Id.* at 445.  That is, the historical "fact" that the defendant was not one of the robbers had already been decided.  It could not be relitigated because "whatever else th[e] constitutional guarantee [against double jeopardy] may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Id.* at 445-46 (citations omitted).

[4] An ultimate fact issue to which collateral estoppel theoretically could apply in this case would be that appellant was not the person in the parked car.  Other historical facts to which collateral estoppel would apply would include: in a DWI acquittal followed by an intoxication manslaughter prosecution, an essential finding that the defendant was not intoxicated.  *See Simon v. Commonwealth*, 258 S.E.2d 567, 572-73 (Va. 1979) (defendant who was acquitted of DWI could be later prosecuted for reckless manslaughter but government could not introduce evidence that he was intoxicated at the time of accident, although it could introduce evidence that he had been drinking).

jeopardy prevents any retrial of the failure-to-identify charge.[5]  But that erroneous legal ruling does not prevent the State from prosecuting appellant for a different offense–possession of methamphetamine–that arose out of the same incident.

The county court judge, in the middle of appellant's trial on the failure-to-identify charge, entered a directed verdict against the State.  He explained his rationale to the jury:

> [The officer] was outside his jurisdiction, stopped to investigate what was going on.  I don't think there's anything wrong with that.  But with him being outside his jurisdiction and him not testifying to any articulable facts as to how he thinks an offense might have been committed, I think the law requires me to grant the motion to suppress, which means y'all have no evidence in front of you.

The trial judge was wrong about the law, but he necessarily decided two historical facts:

1.    Officer Johnson–a patrol officer for the City of Bullard–was outside the Bullard city limits when he saw appellant's car;

2.    Officer Johnson did not testify to any facts about a specific offense that he thought appellant had committed at the time that he detained appellant.

No one wants to relitigate those facts.  Everyone agrees with those facts.  The evidence at

---

[5] *See Arizona v. Washington*, 434 U.S. 497, 503 (1978) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.'  If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.") (citation omitted); *Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (even though the acquittal verdict may be based "upon an egregiously erroneous foundation," the verdict is final, and the defendant cannot be retried for the same offense without violating double jeopardy); *see also United States v. Oppenheimer*, 242 U.S. 85, 87 (1916) (defendant whose conspiracy indictment had been dismissed with prejudice because of a perceived statute of limitations bar could not be reprosecuted for the same conspiracy offense after it was discovered that limitations did not, in fact, bar prosecution; "It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence").

both the county-court and district-court suppression hearings was the same concerning those two facts. The problem arose with how the county court judge treated those facts. He misapplied the law to those historical facts.

First, he misunderstood the law that allows a police officer to arrest someone when the officer is outside his jurisdiction. Under Article 14.03(d),[6] a police officer has the authority to temporarily detain or arrest for any felony or breach of the peace offense, such as DWI or public intoxication, that is committed within his presence or view.[7] Further, under Article 14.03(g)(2),[8] Officer Johnson had state-wide authority to detain or arrest for any non-

---

[6] TEX. CODE CRIM. PROC. art. 14.03(d). That provision reads as follows:

A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

[7] *See Brother v. State*, 166 S.W.3d 255, 260 (Tex. Crim. App. 2005) (city police officer who had articulable suspicion to believe that defendant was driving while intoxicated could detain him outside of his city limits).

[8] TEX. CODE CRIM. PROC. art. 14.03(g)(2). That provision reads as follows:

A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.

Article 2.12(3) of the same Code states that peace officers include "marshals or police officers of

traffic offense and county-wide jurisdiction to detain or arrest for any traffic offense committed in his presence or view.

So the historical fact that Officer Johnson was outside of the city limits of Bullard and technically outside of his jurisdiction was legally irrelevant to any issue for purposes of a motion to suppress in both the failure-to-identify and the possession-of-methamphetamine cases. The Code of Criminal Procedure gives him jurisdiction within Smith County (where the offense occurred) to detain or arrest for any offense. The county court judge made a legal error in giving any significance to the fact that Officer Johnson was "outside his jurisdiction."

The second historical fact that the county court judge found was that Officer Johnson did not testify that he had seen appellant actually commit any specific offense before he initially approached his car–a car with a running engine and headlights pointed toward the closed building at 3:00 a.m.–and woke him up.[9] Again, there is no dispute that this is true.

---

an incorporated city, town, or village."

[9] The evidence showed that Officer Johnson saw a car parked partially on the sidewalk next to a gas station with its engine running and its headlights on at 3:00 a.m. in the morning. Officer Johnson had personally assisted in a burglary investigation at this gas station on a prior occasion and he knew that there had been several other burglaries at this business. He therefore stopped to investigate the suspicious circumstances. The testimony at the failure-to-identify trial that the county court judge relied upon was as follows:

Q:    You've stated in your report that you observed my client, Mr. York, for a couple of minutes before you woke him up; is that accurate?
A:    Yes.
Q:    Would you say that in those couple of minutes, you were able to determine that there was not a burglary at that location going on?
A:    Well, I couldn't say that there was one occurring at that time, yes.

Again, it is not a legally dispositive fact. What mattered was whether Officer Johnson had reasonable suspicion to think that appellant had committed, was committing, or was about to commit some criminal offense, *any* offense, at the time he detained him by asking him to step out of the car.[10] The county court judge was mistaken about the law when he stated that Officer Johnson had to view a specific criminal offense before he could *detain* appellant and investigate the suspicious circumstances.[11] What matters, for purposes of Article 14.03, is that, at the time Officer Johnson *arrested* appellant, he had probable cause to believe that appellant possessed a controlled substance, in this case both marijuana and

---

Q:     Okay. And you didn't see any kind of property or anything in the car, did you?
A:     Not from standing outside, no.
Q:     Nothing that would give you reason to believe that he had burglarized that store?
A:     No.
       . . .
Q:     Okay. Officer, at that time, when you asked for consent to search and continued your investigation, Mr. York hadn't committed any type [of] felony offense within your view at that time, had he?
A:     No, he had not.
Q:     He had not committed any type of offence that would be a breach of the peace; is that correct?
A:     No he had not.
Q:     He hadn't committed any type of public order crime, such as a riot or something to that effect?
A:     No, he had not.

[10] *See Derichsweiler v. State*, ___ S.W.3d ___, No. PD-0176-10, 2011 WL 255299, at *5-6 (Tex. Crim. App. Jan. 26, 2011) ("A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity," but officer need not specify a particular offense that he believes has been, is, or will be committed; "it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction" at the time he makes a temporary detention).

[11] *Id.*

methamphetamine.  And there is no dispute about that legal conclusion.

In sum, collateral estoppel, under the Double Jeopardy Clause, applies to the relitigation of historical facts that were necessarily decided against the State in the first proceeding.  The State did not relitigate any ultimate historical facts that the county court judge found determinative.  The county court judge's entry of an acquittal in the failure-to-identify trial was the result of a mistake of law, not a finding of historical fact.  Therefore, double jeopardy prevented any retrial of that specific charge,[12] but it did not affect the district court judge's authority to apply the law correctly to those same historical facts in a different proceeding.

I therefore concur in the Court's judgment.

Filed: June 29, 2011
Publish

---

[12] *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916).