# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-30256

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2014

Lyle W. Cayce
Clerk

KEVAN BRUMFIELD,

Petitioner-Appellee,

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and KING and CLEMENT, Circuit Judges.

CARL E. STEWART, Chief Judge:

The State of Louisiana appeals the district court's imposition of a permanent injunction, enjoining the State from executing Petitioner-Appellee Kevan Brumfield. The district court granted habeas relief in favor of Brumfield, finding that he is mentally retarded[1] and therefore ineligible for execution based on *Atkins v. Virginia*, 536 U.S. 304 (2002). For the reasons stated herein, we REVERSE the district court's judgment.

---

[1] As some of our sister Circuits have noted, the preferred terminology for mental retardation is now "intellectual disability." *See Pizzuto v. Blades*, 729 F.3d 1211, 1214 n.1 (9th Cir. 2013) (citation omitted); *Hooks v. Workman*, 689 F.3d 1148, 1159 n.1 (10th Cir. 2012) (citation omitted). Nevertheless, because mental retardation is used by the parties and the applicable legal authority, we use mentally retarded throughout our opinion.

No. 12-30256

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Trial and Direct Appeal

In 1995, a jury convicted Brumfield of the first degree murder of a Baton Rouge police officer—Corporal Betty Smothers—and sentenced him to death. The Louisiana Supreme Court affirmed his conviction on direct appeal. *State v. Brumfield*, 737 So. 2d 660 (La. 1998).  He appealed to the United States Supreme Court, but it denied his petition for a writ of certiorari. *Brumfield v. Louisiana*, 526 U.S. 1025 (1999).

### B. State Post-Conviction Proceedings

In 2000, Brumfield filed for post-conviction relief in Louisiana state court alleging, *inter alia*, that he was ineligible for execution due to insanity.  In his petition, he also requested funds to further develop his claims.  Before the state court considered Brumfield's petition, the Supreme Court issued its decision in *Atkins*, which prohibited the execution of mentally retarded criminals. Brumfield then amended his state petition to assert an *Atkins* claim and that he was entitled to an evidentiary hearing on his mental retardation claim.  As evidence of his claim, Brumfield provided the following: 1) his IQ score, obtained prior to trial, of 75; 2) his slow progress in school;[2] 3) his premature birth;[3] 4) his treatment at multiple psychiatric hospitals; 5) various medications he was prescribed; and 6) testimony that he exhibited slower responses than "normal babies," suffered from seizures,[4] and was hospitalized

---

[2] There was testimony that Brumfield read on a fourth grade level, was placed in special education classes, and was diagnosed with a learning disability.

[3] We note that, while Brumfield claimed he was born prematurely, this assertion is contradicted by the record.  However, he accurately stated that his birth weight was 3.5 pounds.

[4] This assertion is also belied by the record, which only reflects that one seizure occurred.

2

No. 12-30256

for months after his birth.  In the petition, Brumfield again requested funds to develop his claims.

On October 23, 2003, the state trial court conducted a hearing on Brumfield's pending petition.    At the hearing, the trial court denied Brumfield's petition in its entirety and stated as to the *Atkins* claim:

> I guess the biggest [issue] we need to address is the claims of mental retardation and *Atkins* and whether or not the defendant is entitled to a hearing to determine that issue, and I've read the cases that were cited and also both sides' arguments, and even in *Atkins* it is clear that everybody that's facing the death penalty is not entitled to an *Atkins* hearing.
>
> The cases say that that's to be taken up on a case-by-case method, and the burden of proving that [] is an issue that needs to be addressed is on the defendant here.  I've looked at the application, the response, the record, portions of the transcript on that issue, and the evidence presented, including Dr. Bolter's testimony, Dr. Guinn's testimony, which refers to and discusses Dr. Jordan's report, and based on those, since this issue—there was a lot of testimony by all of those in Dr. Jordan's report.  Dr. Bolter in particular found [Brumfield] had an IQ of over—or 75.  Dr. Jordan actually came up with a little bit higher IQ.  I do not think that the defendant has demonstrated impairment based on the record in adaptive skills.  The doctor testified that he did have an anti-social personality or sociopath, and explained it as someone with no conscience, and the defendant hadn't carried his burden placing the claim of mental retardation at issue.  Therefore, I find he is not entitled to [an *Atkins*] hearing based on all of those things that I just set out.

The trial court did not address Brumfield's request for funding, and Brumfield's counsel did not raise the issue or specifically object to the court's failure to address it.

Brumfield then filed a writ with the Louisiana Supreme Court, alleging, *inter alia*, that the district court erred in failing to hold an *Atkins* hearing because he had presented substantial evidence supporting the claim.  In the application, Brumfield requested an *Atkins* hearing as well as funding.  The

3

Louisiana Supreme Court denied petitioner's writ without explanation. *Brumfield v. State*, 885 So. 2d 580 (La. 2004).

## C. Federal Post-Conviction Proceedings

On November 4, 2004, Brumfield timely filed a petition for a writ of habeas corpus with the federal district court.  The petition asserted, among other things, that the state court erred in failing to grant relief as to Brumfield's *Atkins* claim and in failing to hold an *Atkins* hearing.  Brumfield also requested funds to enable him to properly present his claims.

After Brumfield filed his petition, the district court appointed counsel, and the Federal Public Defender Board provided expert funding.  In 2007, Brumfield amended his petition to incorporate the expert findings.  The magistrate judge ("MJ") issued a Report and Recommendation, which first found, when considering the evidence Brumfield submitted to the state court, the state court's refusal to grant an *Atkins* hearing to be "reasonable and in accordance with clearly established federal law."  However, the MJ concluded that it should consider the additional evidence Brumfield presented in his amended habeas petition.  In the MJ's view, Brumfield demonstrated cause for failing to provide the state court with the new evidence because he did not have the requisite funding.  Additionally, if Brumfield was barred from presenting the new evidence, he would be prejudiced due to a state statute of limitation. After reviewing the additional evidence, the MJ concluded that Brumfield had established a prima facie case of mental retardation such that he was entitled to an *Atkins* hearing.  The district court adopted the MJ's report and recommendations, and it held a six-day *Atkins* evidentiary hearing in 2010.

On February 22, 2012, the district court granted Brumfield's petition for a writ of habeas corpus on the ground that he is mentally retarded and therefore ineligible for execution.  The district court then issued a permanent

injunction, forbidding the State from executing Brumfield. The State timely appealed.[5]

## II.    DISCUSSION

On appeal, the State first argues that the district court erred by failing to give the proper deference to the state court's denial of Brumfield's request for an *Atkins* hearing. The district court therefore erred, in the State's view, by holding an evidentiary hearing. Alternatively, the State contends that, even if this court were to consider the evidence produced in the federal evidentiary hearing, Brumfield has not proven that he was mentally retarded. We address each argument in turn.

### A. Standard of Review

When considering an appeal from a district court's grant of habeas relief, this court reviews issues of law de novo and findings of fact for clear error. *Wiley*, 625 F.3d at 204–05 (citing *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008)). The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the ability of a federal court to issue a writ of habeas corpus to a state prisoner where the prisoner's claim was "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011). This is true whether the state court addresses all, some, or none of a prisoner's claims. *See Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013).

---

[5] Because the State is the appellant, no Certificate of Appealability is required. *Wiley v. Epps*, 625 F.3d 199, 204 n.2 (5th Cir. 2010); Fed. R. App. P. 22(b)(3).

When a state court adjudicates a prisoner's claim on the merits, a federal habeas court "shall not" grant the prisoner's writ of habeas corpus unless the state court's ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), the law must be "clearly established in the holdings of [the Supreme] Court" at the time of the state court's decision. *Harrington*, 131 S. Ct. at 785 (citation omitted). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted) (first alteration in original). "[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* A state court's decision is not entitled to AEDPA deference under § 2254(d)(1) "if the state court correctly identifies the governing legal principle from the Supreme Court's decisions, but unreasonably applies it to the facts of the particular case" or if the state court "extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."

*Chester v. Thaler*, 666 F.3d 340, 344 (5th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted).

Under § 2254(d)(2), "relief may not be granted unless the decision was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. A factual determination made by a state court must be rebutted by clear and convincing evidence." *Id.* at 348 (quoting *Clark v. Quarterman*, 457 F.3d 441, 443 (5th Cir. 2006)) (internal quotation marks omitted). "The question of whether a defendant suffers from mental retardation involves issues of fact, and thus is subject to a presumption of correctness that must be rebutted by clear and convincing evidence under Section 2254(e)(1)." *Id.* (quoting *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010)) (internal quotation marks omitted).

### B. Applicable Law

The Supreme Court "did not provide definitive procedural or substantive guides for determining when a defendant is mentally retarded." *Hearn v. Thaler*, 669 F.3d 265, 272 (5th Cir. 2012) (quoting *Bobby v. Bies*, 556 U.S. 825, 831 (2009)) (internal quotation marks omitted). Instead, the Supreme Court left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [the] execution of sentences." *Atkins*, 536 U.S. at 317 (internal quotation marks and citation omitted). Therefore, we examine Louisiana law to determine whether Brumfield established the prerequisites of an *Atkins* claim.

Louisiana defines mental retardation as "a disability characterized by significant limitations in both intellectual functioning and adaptive behavior as expressed in conceptual, social, and practical adaptive skills. The onset must occur before the age of eighteen years." La. Code Crim. Proc. art. 905.5.1(H)(1). The Louisiana Supreme Court has held that the confidence range associated with an intellectual quotient ("I.Q.") score of 75 "brush[es] the

threshold score for a mental retardation diagnosis; however, it is possible for someone with an I.Q. score higher than 70 to be considered mentally retarded if his adaptive functioning is substantially impaired." *State v. Dunn* (*Dunn III*), 41 So. 3d 454, 470 (La. 2010).

Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *Id.* at 463 (internal quotation marks and citation omitted). The Louisiana Supreme Court has recognized "six major life activities related to adaptive functioning: self-care, understanding and use of language, learning, mobility, self-direction, and capacity for independent living." *Id.* (citation omitted). This prong is satisfied when there are "significant limitations in . . . at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety . . . ." *Id.* at 459

In *State v. Dunn* (*Dunn II*), 974 So. 2d 658, 662 (La. 2008) (per curiam), the Louisiana Supreme Court held that the procedure it explained in *State v. Williams*, 831 So. 2d 835 (La. 2002) governed cases in which the issue of whether to hold an *Atkins* hearing is raised post-trial. That is, a defendant must first "come forward with some evidence to put his mental condition at issue." *State v. Dunn* (*Dunn I*), 831 So. 2d 862, 884 (La. 2002). The defendant must undergo a mental examination "[i]f the court has reasonable ground to doubt whether the defendant is mentally retarded." *Id.* Essentially, "[t]he defendant [must] come forward with some evidence initially to put his or her mental condition at issue." *Dunn III*, 41 So. 3d at 461. Then, the "defendant must prove his or her mental retardation by a preponderance of the evidence." *Id.*

8

No. 12-30256

**C. Analysis**

We first consider whether the state court's judgment was "on the merits" as contemplated by § 2254(d).  We agree with the district court that the state court's decision was "on the merits."  28 U.S.C. § 2254(d).  The state court did not cite any procedural grounds relating to Brumfield's mental retardation claim in its decision or at its hearing.[6]    Therefore, the state court's determination is due AEDPA deference unless an exception under §§ 2254(d)(1)–(2) applies.  Because no exception applies, we hold that the state court's judgment was entitled to AEDPA deference.

### *1.  28 U.S.C. § 2254(d)(1)*

The district court erred in its determination that the state court decision was not entitled to AEDPA deference.  In the district court's view, the state court was required to provide Brumfield with the funds necessary to develop his claims.  However, there is no Supreme Court decision that has held that prisoners asserting *Atkins* claims are entitled to expert funds to make out a prima facie case.  Rather than present cases holding that Brumfield was entitled to funding to develop his prima facie case, the district court faulted the state court for failing to extend the due process precepts in *Atkins*, *Ford*, and *Panetti* to encompass this aspect of due process.  *See Chester*, 666 F.3d at 344 (holding that a state court's decision is not entitled to AEDPA deference under 2254(d)(1) where the court "unreasonably refuses to extend [a legal principle from Supreme Court precedent] to a new context where it should apply").

---

[6] Even though the state court did not discuss Brumfield's funding request, we presume that its denial of funds was also a decision "on the merits."  *See Johnson*, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").

The district court's holding was an unwarranted extension of Supreme Court jurisprudence. *See id.* at 345 ("The first step in determining whether a state court unreasonably applied clearly established federal law is to identify the Supreme Court holding that the state court supposedly unreasonably applied."). Under *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Ford v. Wainwright*, 477 U.S. 399 (1986), a court is explicitly required to provide an "opportunity to be heard" once the prisoner has made a "substantial threshold showing of insanity." *Panetti*, 551 U.S. at 949 (internal quotation marks and citation omitted). This includes the opportunity to submit expert evidence. *Id.* at 951. However, nowhere does the Supreme Court hold that this opportunity requires the court or the state to provide the prisoner with funds to obtain this expert evidence. Nor has this circuit recognized that such an established federal right exists. *See Morris v. Dretke*, 413 F.3d 484, 501 (5th Cir. 2005) (Higginbotham, J., concurring) ("[T]he State was within its rights to deny [the petitioner] assistance in obtaining intellectual testing [in order to make out a prima facie case of mental retardation].").

We have explained the due process rights due "under *Ford*[:] [o]nce a prisoner seeking a stay of execution has made a 'substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007) (second alteration in original) (quotation omitted). Similarly, "[t]he lesson we draw from *Panetti* is that, where a petitioner has made a prima facie showing of retardation . . . the state court's failure to provide him with the opportunity to develop his claim deprives the state court's decision of the deference normally due." *Id.* Thus, the strictures of procedural due process associated with *Ford* and *Panetti* attach only *after* a prisoner has

made a "substantial threshold showing." Accordingly, we hold that the state court did not violate § 2254(d)(1).[7]

### 2. 28 U.S.C. § 2254(d)(2)

Similarly, the state court's judgment did not violate § 2254(d)(2). Brumfield does not contend that he presented a prima facie showing of mental retardation before the state court. Accordingly, he has waived this claim. *See Trico Marine Assets Inc. v. Diamond B. Marine Servs. Inc.*, 332 F.3d 779, 790 n.6 (5th Cir. 2003) ("Issues not raised or argued in the brief of the appellant may be considered waived and thus will not be noticed or entertained by the court of appeals." (citation and emphasis omitted)). Nevertheless, even if this claim were not waived, our review of the record persuades us that the state court did not abuse its discretion when it denied Brumfield an evidentiary hearing. The district court erroneously found that the state court rested its ruling on Brumfield's adaptive skills and faulted the state court for failing to provide Brumfield with the requisite funding. The district court also chided the state court for relying on evidence presented for mitigation purposes and deciding Brumfield's claim based on a record which failed to discuss all of the necessary elements. In addition, the district court concluded that the state court wrongly used competency evidence to determine Brumfield's *Atkins* claim.

Contrary to the district court's ruling, the state court considered both the intellectual functioning and adaptive behavior prongs of Louisiana's test for

---

[7] Unlike the situation before us in *Wiley*, 625 F.3d 199, there is no violation of due process that would render deference to the state court inappropriate. In *Wiley*, because the state court failed to follow its own procedure, we held that the state court was not due deference under AEDPA. *Id.* at 211. Conversely, neither Brumfield nor the district court could point to any state law or procedure violated by the state court when it denied his *Atkins* claim and request for funds. The cases relied on by Brumfield and the district court simply do not support their contention that the state court strayed from the applicable Louisiana law on this issue.

mental retardation. The state court noted that of the two I.Q. tests, one returned a score of 75 and the other returned "a little bit higher I.Q." The state court then properly considered the evidence of adaptive functioning that Brumfield presented. The state court concluded that Brumfield had not "demonstrated impairment in adaptive skills." The district court criticized the state court for not analyzing each sub-factor of the adaptive skills prong, but there is no requirement that the state court articulate all of its reasons. Notably, no one testified that Brumfield was mentally retarded. Indeed, the record showed that at least one doctor diagnosed him with attention-deficit disorder and an anti-social personality. There was also testimony that Brumfield was capable of daily life activities such as working and establishing relationships. Based on the evidence in the record, we conclude that the state court did not clearly err in determining that Brumfield did not meet his burden of presenting a prima facie case of mental retardation under Louisiana law. Thus, the state court's decision does not fall under the exceptions in § 2254(d) and was entitled to AEDPA deference.

In sum, the district court erred when it failed to give the proper AEDPA deference to the state court's decision. Because the state court's judgment was entitled to AEDPA deference, "there was no reason for the district court to conduct an evidentiary hearing." *Blue v. Thaler*, 665 F.3d 647, 661 (5th Cir. 2011). Accordingly, it was error for the district court to conduct such a hearing, and we therefore disregard the evidence adduced for the first time before the district court for purposes of our analysis under § 2254(d). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2010) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *Blue*, 665 F.3d at 655–56 ("*Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court

evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).").[8]

## III.   CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of habeas relief in favor of Brumfield.

---

[8] Even if we were to consider the new evidence presented to the district court, we likely would hold that Brumfield failed to establish an *Atkins* claim.  *See Dunn III*, 41 So.3d 454 (holding, under similar circumstances, that the defendant failed to carry his burden of establishing that he was mentally retarded).