**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-1704
——————

WALTER C. ANDERSON,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

———————————

On Petition for Review of an Order of the
United States Tax Court
(Agency No. 07-20364)
Administrative Judge:  Honorable David Gustafson

———————————

Argued on May 7, 2012

Before:  SLOVITER and ROTH, <u>Circuit Judges</u>
and POLLAK*, <u>District Judge</u>

(Opinion filed: September 7, 2012 )

Steven J. Jozwiak, Esquire **(Argued)**
601 Longwood Avenue
Suite 300
Cherry Hill, NJ   08002

Counsel for Appellant


Gilbert S. Rothenberg, Esquire
Acting Deputy Assistant Attorney General
Bethany B. Hauser, Esquire  **(Argued)**
Robert W. Metzler, Esquire
Francesca U. Tamami, Esquire
United States Department of Justice
Tax Division
950 Pennsylvania Avenue, N. W.
P. O. Box 502
Washington, DC   20044

Counsel for Appellee

---

*Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sat by designation.  Judge Pollak died on May 8, 2012; this opinion is filed by a quorum of the court pursuant to 28 U.S.C. § 46 and the Third Circuit I.O.P. 12.1(b).

OPINION

**ROTH**, Circuit Judge:

This appeal arises out of a civil tax fraud proceeding in United States Tax Court. The taxpayer challenges the Tax Court's determination that, under the doctrine of collateral estoppel, his previous guilty plea for criminal tax evasion conclusively established the taxability to him of specific income that his criminal indictment charged him with failing to report. He additionally argues on the basis of a number of preclusion doctrines that the Internal Revenue's (IRS) concession of all tax deficiency and penalty issues for certain years should have prevented it from obtaining recovery of such payments in other years because the issues for all years were identical. As explained below, we find that these arguments are without merit, and we will therefore affirm the Tax Court's judgment.

## I. **BACKGROUND**

On September 30, 2005, Petitioner Walter Anderson was charged in a superseding indictment with federal tax evasion for tax years 1995 through 1999, in violation of 26 U.S.C. § 7201. During those years, Anderson was a telecommunications entrepreneur and venture capitalist who was actively involved in the operation of several international companies. Among these companies was Gold & Appel Transfer S.A. (G & A), a British Virgin Islands corporation

which generated hundreds of millions of dollars of income during the tax years at issue. The government alleged that because G & A was a "controlled foreign corporation," under Anderson's control, he was required to recognize a share of its income on his tax return and that he fraudulently failed to do so. The government alleged that for the five-year period at issue, Anderson had fraudulently underpaid his taxes by $184 million, 99% of which stemmed from the income of G & A. Pursuant to an agreement with the government, on September 8, 2006, Anderson pleaded guilty to the federal tax evasion charges for 1998 and 1999, while those same charges for 1995, 1996 and 1997 were dismissed.[1] He was sentenced to 108 months imprisonment.

On July 17, 2007, the IRS issued a notice to Anderson determining civil tax deficiencies and fraud penalties for tax years 1995 through 1999. *See* 26 U.S.C. §§ 6212, 6663. (The deficiency amounted to the $184 million of underpaid

---

[1] Anderson had also been charged with obstruction of the internal revenue laws of the United States, in violation of 26 U.S.C. § 7212(a), fraud in the first degree under the laws of the District of Columbia, specifically 22 D.C. Code § 3221(a), in relation to D.C. income tax filings and payments for years 1995 through 1999, and evasion of D.C. use taxes on a number of purchases made between 1997 and 2001, also in violation of 22 D.C. Code § 3221(a). All of these charges were dismissed with the exception of the charge of first degree fraud under D.C. law for 1999, to which Anderson pleaded guilty.

taxes, resulting in a fraud penalty of $138 million.[2]) On September 7, 2007, while he was incarcerated in New Jersey, Anderson filed a petition in the United States Tax Court to redetermine these deficiencies. *See* 26 U.S.C. § 6213(a). In response to motions by both parties, the Tax Court granted partial summary judgment to the IRS, finding that under the doctrine of collateral estoppel, Anderson's criminal conviction for tax evasion in 1998 and 1999 precluded him from contesting that he fraudulently underpaid his incomes taxes in those two years. The Tax Court denied summary judgment on the fraud issue for tax years 1995-1997, without prejudice to renew the motion "with a better record and more focused contentions."

The holding on the 1998 and 1999 tax years had three principal effects. First, it established that Anderson had underpaid his income taxes in 1998 and 1999. Second, because a fraud penalty can only be assessed where a tax underpayment is due to fraud, it relieved the IRS of its burden of proving this penalty was applicable to Anderson for those two years. *See* 26 U.S.C. § 6663(a). Finally, because the three-year statute of limitations on the assessment of a tax does not apply where a tax return has been filed falsely or fraudulently with the intent of evading tax, 26 U.S.C. § 6501(c)(1), it prevented Anderson from arguing that the IRS's attempts to collect taxes for 1998 and 1999 were untimely.[3]

---

[2] The penalty is equal to 75% of the amount of the underpayment of tax that is due to fraud. *See* 26 U.S.C. § 6663(a).

[3] Anderson filed his tax return for 1998 on September 30, 1999, and his tax return for 1999 on October 19, 2000. Without this exception to the three-year statute of limitations,

4

Though this decision established that Anderson had fraudulently underpaid his income taxes in 1998 and 1999, it left open for further proceedings the determination of the amounts of the tax deficiencies and penalties for those years.

Based on this ruling, the IRS filed a motion to sever tax years 1995, 1996, and 1997 from the case, stating that it "ha[d] decided to concede all tax and penalty issues for [those years] and wishe[d] to file a motion for entry of decision as to those years." In its motion, the IRS explained that nearly 80% of the total deficiency and penalties for the five-year period stemmed from just 1998 and 1999, and that because proving fraud for 1995 through 1997 via trial would needlessly complicate and lengthen the case for a comparatively limited additional monetary recovery, it preferred to abandon its efforts for those years. The Tax Court found that, given its particular procedural rules, severing the case in this way would needlessly create clerical and administrative complexities, and it therefore denied the motion. It stated in its order, however, that it would "take notice of the [IRS's] concession of all tax and penalty issues for 1995, 1996, and 1997 and [would] reflect that concession in its eventual entry of decision in [the] case."

This order led to the filing of a second set of summary judgment motions. Anderson argued in his motion that, notwithstanding the Tax Court's earlier holding that his criminal convictions for tax evasion collaterally estopped him from denying fraudulent underpayment of tax in 1998 and 1999, the IRS's subsequent concession of all tax and penalty

the IRS's notice of tax deficiency issued on July 17, 2007, would have been untimely.

5

issues for 1995, 1996, and 1997 established that the income of G & A and interest income from an account at Barclays Bank were not taxable to him even in 1998 and 1999. The IRS, meanwhile, argued in its motion that Anderson was precluded from contesting that the income of G & A in 1998 and 1999 constituted taxable income to him under Subpart F of the Tax Code. The Tax Court denied Anderson's motion and granted partial summary judgment to the IRS. It held, in favor of the IRS, that the concessions related to tax years 1995 through 1997 did not resolve the deficiency and penalty issues for 1998 and 1999. It further agreed with the IRS's position that the proceedings in Anderson's criminal case established that G & A's income in 1998 and 1999 was taxable to him. The Tax Court rejected the IRS's argument, however, that Anderson's guilty plea estopped him from contesting that the income of G & A was taxable to him specifically under Subpart F of the Tax Code. Anderson now challenges the adverse holdings.

## II. **DISCUSSION**

This Court has jurisdiction to review final orders of the Tax Court based on 26 U.S.C. § 7482(a)(1). [4] On March 7, 2001, pursuant to an agreement between the parties, the Tax Court entered an order determining the tax deficiency and fraud penalty for each year from 1995 through 1999, leaving no issues for it to decide and thus providing this Court with jurisdiction under that statute. We review the Tax Court's legal conclusions *de novo* and its factual findings for clear

---

[4] Venue in this Court is appropriate because Anderson was a resident of New Jersey at the time he filed his petition for redetermination. *See* 26 U.S.C. § 7482(b)(1)(A).

error.  *Capital Blue Cross v. Comm'r*, 431 F.3d 117, 123-24 (3d Cir. 2005).

### A. The Preclusive Effect of Anderson's Criminal Conviction

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).  It applies, however, only if:  "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992) (citations omitted).  In light of these principles, we agree with the numerous courts that have held that, under the doctrine of collateral estoppel, a conviction for criminal tax evasion conclusively establishes the defendant's civil liability for tax fraud for the same year. *See Blohm v. Comm'r*, 994 F.2d 1542, 1554 (11th Cir. 1993); *Klein v. Comm'r*, 880 F.2d 260, 262 (10th Cir. 1989); *Gray v. Comm'r*, 708 F.2d 243, 246 (6th Cir. 1983); *United States v. Moore*, 360 F.2d 353, 356 (4th Cir. 1966).  This is because the elements of evasion under 26 U.S.C. § 7201 and fraud under 26 U.S.C. § 6663 are identical. *See, e.g., Gray*, 708 F.2d at 246.

Anderson nevertheless argues that the Tax Court erred in holding that his tax evasion conviction collaterally estopped him from litigating the taxability to him in 1998 and 1999 of the income of G & A in the civil tax fraud

7

proceedings. Where, as here, a conviction is the result of a guilty plea, its preclusive effect extends to all issues that are necessarily admitted in the plea. *See De Cavalcante v. Comm'r*, 620 F.2d 23, 27 n.9 (3d Cir. 1980); *United States v. $448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992); *United States v. Wight*, 839 F.2d 193, 196 (4th Cir. 1987); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978). We find that Anderson admitted in his plea that the income of G & A was taxable to him in 1998 and 1999, and that this admission was necessary to his conviction.

Anderson pleaded guilty to a charge that in 1998 "a substantial additional tax was due and owing to the United States" from him and that "[s]pecifically, he failed to report . . . $126,303,951 Subpart F investment-type income from G & A." He also pleaded guilty to another charge that alleged the same with respect to 1999, except that the amount of unreported G & A income was $238,561,316. These charges essentially allege that Anderson underpaid his taxes in 1998 and 1999 because he did not report the income of G & A, which is comprehensible only to the extent that such income was taxable to him in those years. By pleading guilty to these charges, Anderson thus admitted that required premise.

This admission could be considered necessary, though, only if Anderson's conviction "hinge[d] on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009). To convict Anderson of tax evasion, the Government was required to prove the existence of a tax deficiency. *See* 26 U.S.C. § 7201. Were the income of G & A not taxable to him in 1998 and 1999, however, Anderson's failure to report it on his tax return would not have given rise to a deficiency. The Government thus could not have secured his conviction without establishing the

8

taxability of this income. We therefore find that Anderson's conviction did hinge on that issue. Our conclusion is not affected by the fact that Anderson was also charged with failing to report income from other sources in 1998 and 1999 – including an account he held at Barclays Bank, a company called Esprit Telecom, and various capital gains – the taxability of which could also have substantiated his conviction. As we have previously held, all "independently sufficient alternative findings should be given preclusive effect," *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006). The taxability to Anderson of the income of G & A in 1998 and 1999 was independently sufficient to establish the existence of a tax deficiency in those years and was thus a fact that was necessary to his conviction. His admission to it in his guilty plea accordingly precludes him from contesting that issue in his civil tax fraud case.[5]

Finally, that the income of G & A is taxable to Anderson specifically under Subpart F of the Tax Code is also settled for purposes of this case. The Tax Court rejected the IRS's argument that Anderson's guilty plea estopped him from contesting this tax treatment of G & A's income. It reasoned that, although G & A's income was described as

---

[5]Pursuant to this reasoning, we also find that Anderson was collaterally estopped from disputing that the income from his Barclays account was taxable to him in 1998 and 1999. Based on this additional finding and on our analysis relating to the income of G & A, we reject Anderson's argument that the Tax Court erred in denying him summary judgment on the issues of the taxability of income from the Barclays account and from G & A in 1998 and 1999.

"Subpart F income" in the charges of the indictment to which Anderson pleaded guilty, this detail was not essential to his judgment of conviction and thus could not be given preclusive effect in subsequent proceedings. Regardless of this holding, however, the parties' subsequent stipulation of the nature and composition of G & A's income, designating amounts for Deficiency and Penalty for 1998 and 1999, necessitate the determination that it is taxable to Anderson under Subpart F because the figures would not support Anderson's alternate theory that the income was capital gains. This conclusion, along with the preclusive effect of Anderson's conviction for tax evasion described above, effectively resolve his civil tax deficiency stemming from the income of G & A.

### A. The Preclusive Effect of the IRS's Concession of All Deficiency and Penalty Issues for 1995-1997

Anderson argues that because the IRS conceded all tax deficiency and penalty issues for 1995, 1996, and 1997, the Tax Court was required to find in his favor on those issues for the 1998 and 1999 tax years as well. He specifically advances this argument in relation to the income of G & A and the interest income of his account at Barclays Bank. He relies on three separate legal doctrines to support this argument - collateral estoppel, law of the case, and judicial admission – but each is inapplicable.

#### 1. *Collateral Estoppel*

Anderson claims that when the Tax Court issued its order denying the IRS's motion to sever, in which it stated that it "takes notice of [the IRS's] concession of all tax and

penalty issues for 1995, 1996, and 1997 and will reflect that concession in its eventual entry of decision in [the] case," it decided those issues in his favor. He further claims that all deficiency and penalty issues for 1995 through 1997, including those related to G & A and his Barclays account, are "identical in all respects" to those for 1998 and 1999. On this basis, Anderson argues that, by virtue of collateral estoppel, it is conclusively established in his civil tax fraud proceeding that the income from G & A and from his Barclays account gave rise to no tax deficiency or fraud penalty in 1998 and 1999.

As we have already noted, an issue is conclusively established in future litigation through the doctrine of collateral estoppel only when it is determined by a final judgment. *Graham*, 973 F.2d at 1097. This principle is firmly established and beyond question. *See, e.g., G. & C. Merriman Co. v. Saalfield*, 241 U.S. 22, 28 (1916) ("[I]t is familiar law that only a final judgment is *res judicata* . . ."); *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) ("[I]f there is no judgment, there is no preclusion."); *Clausen Co. v. Dynatron/Bondo Corp.*, 889 F.2d 459, 465-66 (3d Cir. 1989) (finding collateral estoppel did not apply to an interlocutory disposition). The Tax Court's denial of the IRS's motion to sever can therefore have no preclusive effect under that doctrine. It does not constitute a final judgment on any issue, including on that of whether Anderson was liable for tax deficiencies or fraud penalties for any year in relation to income from G & A or from his account at Barclays. Instead, all the Tax Court did in that order was advise the parties that it was taking notice of the IRS's desire not to litigate tax years 1995 through 1997 and state that it would factor that position into its eventual final judgment. When

11

that final judgment was issued, it showed deficiencies and penalties for 1998 and 1999 that implicitly included amounts related to G & A and the Barclays account. Anderson identifies no previous final judgment making a determination in conflict with this result, and his argument that the Tax Court should have held that it had been conclusively established via the doctrine of collateral estoppel that he was not liable for deficiencies or penalties in relation to these two items in 1998 and 1999 thus cannot be accepted.

## 2. *Law of the Case*

Anderson makes a similar argument that the Tax Court's denial of the IRS's motion to sever forecloses litigation of the taxability to him of the income G & A in 1998 and 1999 under the law of the case doctrine. Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Anderson asserts that the Tax Court's statement that it was "taking notice" of the IRS's desire not to litigate tax years 1995 through 1997 was actually a holding that he was not liable for tax deficiencies or penalties for those years, and that because the IRS had alleged that he should have recognized income from G & A on his tax return for those years, it is additionally a legal determination that such income was not taxable to him in any year – including 1998 and 1999. We disagree. The Tax Court's statement that it took notice of the IRS's desire to concede tax and penalty issues for 1995 through 1997 simply does not represent any sort of decision. Even if it did constitute a decision as to those three years, there is no merit to Anderson's argument that it necessarily implies that the Tax

12

Court determined as a matter of law that income from G & A is not taxable to him, as the "decision" could be supported by any number of rationales. For example, a finding that Anderson was not liable for deficiencies or penalties for 1995 through 1997 could just as easily rest on a lack of evidence of fraud in those years, which as discussed earlier, would bar the IRS's claims on statute of limitations grounds. Anderson's argument asks the Court to read more into the Tax Court's "tak[ing] notice" than is warranted or possible, and it must be rejected.

### 3. *Judicial Admission*

Finally, Anderson argues that the statement in the IRS's motion to sever conceding deficiency and penalty issues for 1995 through 1997 constitutes a judicial admission that prevents the IRS from arguing "that there is United States tax liability for [G & A]" or that interest income from his Barclays account was intentionally omitted from his tax return in 1998 or 1999. Judicial admissions are "admissions in pleadings, stipulations [or the like] which do not have to be proven in the same litigation." *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956). To be binding, judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007). For this reason, even if this Court were to accept the dubious claim that the IRS conceded in its motion to sever that income from G & A was not taxable to Anderson, that concession would not be binding on it because it would be a statement of a legal proposition. Additionally, to be binding, judicial admissions must be unequivocal. *Id.* The IRS's motion to sever very clearly relates only to tax years 1995,

1996 and 1997, and thus cannot be deemed to unequivocally state that the income of G & A was not taxable to Anderson or that he did not intentionally omit the interest on his Barclays account from his tax return in subsequent years. The doctrine of judicial admissions therefore has no application here.

## III. __CONCLUSION__

We hold that Anderson's conviction for tax evasion in 1998 and 1999 precludes him, by virtue of the doctrine of collateral estoppel, from contesting in subsequent civil fraud proceedings that the income of G & A was taxable to him in those years. We additionally conclude that the IRS's concession of all deficiency and penalty issues for the years 1995, 1996, and 1997 has no preclusive effect on those issues for 1998 and 1999. For these reasons, we will affirm the Tax Court's judgment.