T.C. Memo. 2019-146

UNITED STATES TAX COURT

BERTRAM RUSSELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18571-16.                    Filed October 30, 2019.

Bertram Russell, pro se.

<u>Harry J. Negro</u>, <u>Kristina L. Rico</u>, and <u>Corey R. Clapper</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a $121,695 deficiency in
petitioner's 2000 Federal income tax, a $91,271.25 civil fraud penalty under
section 6663,[1] and a $29,749.75 addition to tax under section 6651(a)(1).  The

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] issues before this Court are: (1) whether petitioner received $328,440 in unreported income in 2000, (2) whether petitioner is liable for a civil fraud penalty under section 6663, and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioner resided in Pennsylvania.

Petitioner's Background

Petitioner was a licensed physician for almost 30 years, practicing radiology. Petitioner obtained a bachelor of science degree from Johns Hopkins University and a medical degree from Thomas Jefferson University Medical College in 1976. As part of his training petitioner had a radiology residency at Mercy Catholic Medical Center for one year, switched to Bryn Mawr Hospital, and then finished the fourth year of his residency at Thomas Jefferson University Medical College.

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** As a radiologist petitioner specialized in diagnosing and treating disease and injury through the use of medical imaging techniques such as x rays, CT scans, and MRIs. Petitioner also acted as a consultant to referring physicians.

Petitioner's Family

Petitioner was married to Dr. Pamela Russell, a neonatolgist, from 1977 until 2011, when their divorce was finalized. Petitioner and Dr. Russell have three children. Dr. Russell worked as a doctor at the same hospital as petitioner in 2000, was a salaried employee, and received a Form W-2, Wage and Tax Statement. Dr. Russell's income was used to pay for daily management of the household and children, while petitioner's income was supposed to pay for school tuition, taxes, and retirement. Petitioner and Dr. Russell each had a separate, individual bank account, and Dr. Russell did not have access to petitioner's bank account or credit cards.

Petitioner's History as an Independent Contractor

In 1980 petitioner became an associate with Chester County Radiology Associates, P.C., at Chester County Hospital. When he started at the hospital, he was a salaried employee paid by Chester County Radiology Associates, P.C., and received a Form W-2. In either the late 1980s or early 1990s petitioner requested to be treated as an independent contractor by Chester County Radiology

[*4] Associates, P.C., which he was allowed to do. No other radiologists at Chester County Radiology Associates, P.C., were classified as independent contractors. Petitioner's paychecks were sent to his home address and made payable to Pennsylvania Physicians, P.C. (Pennsylvania Physicians). No Federal income tax was withheld from the paychecks.

Chester County Radiology Associates, P.C., eventually merged into the University of Pennsylvania Health System (UPHS). The Trustees of the University of Pennsylvania own and operate UPHS and the Clinical Practices of the University of Pennsylvania (CPUP). CPUP operates a radiology department known as the Division of Community Radiology. Petitioner continued to provide radiology services as an independent contractor after UPHS and CPUP took over. Petitioner's paycheck continued to be made payable to Pennsylvania Physicians, rather than petitioner. All of the other radiologists working for UPHS and CPUP were salaried employees receiving Forms W-2.

Pennsylvania Physicians

Pennsylvania Physicians was incorporated in 1996 by petitioner, Bernard J. Bagdis, a tax attorney, and Dr. John P. Leichner. Petitioner was president of Pennsylvania Physicians, which had its registered office at J. Bagdis' office but otherwise had no physical location. According to petitioner the main purpose of

**[*5]** the corporation was to address a perceived malpractice crisis and to become a self-insurer for physicians. Pennsylvania Physicians was purportedly supposed to grow and acquire other doctors. In practice, no other doctors were acquired. Pennsylvania Physicians never had employees, never filed employment tax returns, and never filed corporate income tax returns reporting the income received from CPUP, including for tax year 2000. Petitioner claimed that he lent money that he had inherited to Pennsylvania Physicians to invest "equity" in Pennsylvania Physicians although there is no documentary evidence of this loan.

Petitioner's Pennsylvania Physicians Checking Account

Petitioner opened a checking account in the name of Pennsylvania Physicians with First Union National Bank over which he had signatory authority. Dr. Leichner also had his own Pennsylvania Physicians bank account. Dr. Leichner never had access to petitioner's Pennsylvania Physicians bank account, nor was he aware of it.

Independent Contractor Agreement

In 1997 CPUP entered into an agreement with Pennsylvania Physicians pursuant to which petitioner, as an independent contractor, would provide services customarily performed by physicians practicing radiology to CPUP in exchange for compensation of $5,900 per week. The agreement also stated that

[*6] Pennsylvania Physicians was "responsible for all federal, state and local taxes on the compensation paid" by Pennsylvania Physicians to petitioner. This agreement was in effect in 2000.

During tax year 2000, 13 checks were written by CPUP to Pennsylvania Physicians totaling $328,440. The checks were payment for services provided by petitioner as a radiologist. Petitioner deposited the checks into the Pennsylvania Physicians checking account that he maintained signatory control over. Petitioner did not report the $328,440 on Pennsylvania Physicians' corporate income tax return or on his personal income tax return.

The 2000 Tax Return

For 2000 petitioner and Dr. Russell signed and filed a joint Form 1040, U.S. Individual Income Tax Return, that was received by respondent on September 13, 2002, despite the fact that it was due on April 15, 2001. Petitioner did not request an extension of time to file the return. The only wages included on the joint income tax return were Dr. Russell's wages totaling $163,793. The $328,440 that Pennsylvania Physicians had been paid for the services petitioner supplied was not reported anywhere on the return.

**[*7]** <u>Petitioner's Criminal Conviction for Income Tax Evasion</u>

Petitioner was indicted on November 27, 2007, in the case of <u>United States v. Bagdis</u>, No. 07-cr-00730 (E.D. Pa. Nov. 27, 2007). The November 27, 2007, indictment charged petitioner with various tax crimes, including evading income tax in violation of section 7201 for tax year 2000. On April 22, 2009, petitioner was convicted by a jury of 16 criminal offenses, including: one count of conspiracy to defraud the United States in violation of 18 U.S.C. sec. 371 (2006) for acts occurring between 1996 and 2006; seven counts of tax evasion under section 7201 for tax years 2000 through 2006; two counts of subscribing a false tax return in violation of section 7206(1) for tax years 1998 and 2000; and six counts of failing to file tax returns or supply information under section 7203 for tax years 2001 through 2006.

On May 14, 2010, petitioner was adjudged guilty by the U.S. District Court for the Eastern District of Pennsylvania. Petitioner was sentenced to 66 months of imprisonment and ordered to pay $1,158,914.99 in restitution.

<u>The Examination Process of Petitioner's 2000 Tax Return</u>

Revenue Agent Kenneth Kelly conducted an examination of petitioner's 2000 tax return in 2015. As part of this examination Agent Kelly assisted in producing a Form 3198, Special Handling Notice for Examination Case

**[*8]** Processing.  This form internally proposed a civil fraud penalty under section 6663.  The proposed section 6663 civil fraud penalty received written approval from Agent Kelly's immediate supervisor before August 23, 2015.

On June 29, 2016, respondent sent petitioner a notice of deficiency for 2000 in which respondent determined a deficiency in Federal income tax of $121,695, a civil fraud penalty under section 6663 of $91,271.25, and an addition to tax under section 6651(a)(1) of $29,749.75.

OPINION

## I.      Unreported Income

We first address the $121,695 deficiency based on petitioner's purported failure to report $328,440 in income for 2000.  The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Where a case involving unreported income is appealable to the Court of Appeals for the Third Circuit, which is the case here absent a contrary written stipulation, see sec. 7482(b)(1)(A), the Commissioner must produce evidence linking the taxpayer to the tax-generating activity in order to benefit from the presumption of correctness, Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986) (citing Gerardo v.

**[*9]** <u>Commissioner</u>, 552 F.2d 549, 554 (3d Cir. 1977), <u>aff'g in part, rev'g in part and remanding</u> T.C. Memo. 1975-341), <u>vacating and remanding</u> T.C. Memo. 1985-101.

Respondent has produced evidence of 13 payments from CPUP to Pennsylvania Physicians and the deposit of those funds into a checking account controlled by petitioner. Respondent has also produced evidence that petitioner performed medical services in exchange for the payments. Therefore, respondent's determination in the notice of deficiency is entitled to its presumption of correctness.

Section 61(a) defines gross income to mean "all income from whatever source derived". Except as otherwise provided, gross income includes "[c]ompensation for services, including fees, commissions, fringe benefits, and similar items". Sec. 61(a)(1). This definition is construed broadly and extends to accession to wealth over which the taxpayer has complete control. See <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 431 (1955).

Taxpayers have the right to shape business transactions to minimize the incidence of taxation, including the right to use corporate entities. <u>Gregory v. Helvering</u>, 293 U.S. 465, 469 (1935). Furthering this pursuit, a "corporate entity is deemed to exist as a separate taxpayer if it is organized to carry on a business

[*10] activity or if, in fact, it has carried on such activity." Pappas v. Commissioner, T.C. Memo. 2002-127, 2002 WL 1035454, at *8; see also Moline Props., Inc. v. Commissioner, 319 U.S. 436, 439 (1943) ("[S]o long as * * * [the corporate purpose] is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."). However, in "matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal." Pappas v. Commissioner, 2002 WL 1035454, at *8 (quoting Moline Props., Inc. v. Commissioner, 319 U.S. at 439).

Characteristics of a sham corporate entity include: "the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." Id. at *9 (quoting LiButti v. United States, 107 F.3d 110, 119 (2d Cir. 1997)).

Pennsylvania Physicians' activities reek of a sham corporate entity. Pennsylvania Physicians filed no corporate income tax return for any year, including 2000. The entity had no employees and no proper physical location, and

**[*11]** it appears to have respected no corporate formalities. There is no evidence that it ever paid any dividends. The 13 payments from CPUP to Pennsylvania Physicians were deposited into a checking account that petitioner, and only petitioner, exercised control over. Funds in this checking account were later used to pay petitioner's personal expenses, such as private school tuition for his children. Petitioner observed no meaningful distinction between his personal funds and the funds of Pennsylvania Physicians. We therefore find that Pennsylvania Physicians is a sham corporate entity which is disregarded for Federal income tax purposes.

Petitioner argued that Pennsylvania Physicians, rather than petitioner, performed the radiology services for CPUP, but the independent contractor agreement between the parties expressly states that petitioner would be performing the services in his capacity as a physician. Petitioner also claims that the money he received from Pennsylvania Physicians was repayment for a loan he made to Pennsylvania Physicians, but he introduced no evidence of a loan other than his own unconvincing testimony.

Accordingly, we hold that respondent's determination of unreported income as set forth in the notice of deficiency is correct, and that determination is sustained.

[*12] II.    <u>Section 6663 Civil Fraud Penalty</u>

    A.    <u>Section 6751(b)(1) Supervisory Approval</u>

As a threshold matter with respect to the section 6663 civil fraud penalty, the Commissioner's burden of production under section 7491(c) includes introducing sufficient evidence to establish compliance with the supervisory approval requirements of section 6751(b)(1).  <u>See</u> <u>Graev v. Commissioner</u>, 149 T.C. 485, 493 (2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016). Section 6751(b)(1) requires the Commissioner to show the section 6663 civil fraud penalty was "personally approved (in writing) by the immediate supervisor of the individual" making the initial penalty determination.

The record contains sufficient evidence that the requisite supervisory approval for the section 6663 civil fraud penalty was obtained.

    B.    <u>Collateral Estoppel</u>

Respondent argues that petitioner's previous conviction for tax evasion under section 7201 collaterally estops petitioner from denying in the present civil tax proceeding that (1) his failure to report income resulted in an underpayment of

**[*13]** his 2000 Federal income tax and (2) at least part of the underpayment is due to fraud within the meaning of section 6663. We agree.[2]

Section 6663(a) provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy this burden, respondent must establish that: (1) an underpayment exists and (2) the taxpayer intended to evade tax known to be owed by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. See Sadler v. Commissioner, 113 T.C. 99, 102 (1999); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

In Montana v. United States, 440 U.S. 147, 153 (1979), the Supreme Court explained the doctrine of collateral estoppel as follows: "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Collateral estoppel applies only if "(1) the issue sought to be precluded [is] the same as that

---

[2]Respondent concedes that petitioner may still contest the precise amount of unreported income for 2000, as the determination of the precise amount of unreported income was not essential to his conviction.

**[*14]** involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Anderson v. Commissioner, 698 F.3d 160, 164 (3d Cir. 2012) (alterations in original) (quoting Graham v. IRS (In re Graham), 973 F.2d 1090, 1097 (3d Cir. 1992)), aff'g T.C. Memo. 2009-44.

It is well established that a conviction for criminal tax evasion under section 7201 conclusively establishes the defendant's civil liability for tax fraud under section 6663 when the conviction was for the same taxable year. See id. at 164; DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The only practical difference between criminal tax evasion under section 7201 and civil tax fraud is the "larger quantum of proof required in a criminal evasion case". Edwards v. Commissioner, T.C. Memo. 2016-117, at *23 (quoting Moore v. United States, 360 F.2d 353, 355 (4th Cir. 1965)).

Petitioner was convicted of tax evasion under section 7201 for tax year 2000, and that judgment has become final. Accordingly, petitioner is precluded from denying that he underpaid his tax for tax year 2000 and that he filed a false and fraudulent Federal income tax return with the requisite fraudulent intent. Although petitioner is not precluded from contesting precisely how much he underpaid his tax for tax year 2000, respondent has shown by clear and convincing

**[*15]** evidence that petitioner did not report $328,440 in taxable income. We therefore hold that petitioner is liable for the section 6663 civil fraud penalty.

III.    Section 6651(a)(1) Addition to Tax

Respondent determined that petitioner was liable for an addition to tax under section 6651(a)(1). Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to timely file a return unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.

The Commissioner has the burden of production with respect to the section 6651(a)(1) addition to tax. See sec. 7491(c). To meet this burden, the Commissioner must produce evidence that the addition to tax is appropriate. See id.; Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden, the taxpayer has the burden of proof with respect to exculpatory factors such as reasonable cause. Higbee v. Commissioner, 116 T.C. at 446-447.[3]

Respondent has shown that petitioner's return was due by April 15, 2001, and that the return was not filed until September 13, 2002. Petitioner did not

---

[3]Sec. 6751(b)(1), which requires respondent to show certain penalties were "personally approved (in writing) by the immediate supervisor of the individual" making the initial penalty determination, does not apply to sec. 6651 additions to tax. See sec. 6751(b)(2)(A).

[*16] request an extension.  Further, petitioner did not show any reasonable cause for his failure to timely file the return.  Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.