# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39061 (reh)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jonathan P. ROBERTSON**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 August 2020

———————————

*Military Judge:* Jefferson B. Brown.

*Approved sentence:* Reduction to E-3. Sentence adjudged 18 September 2018 by GCM convened at Offutt Air Force Base, Nebraska.

*For Appellant:* Major David A. Schiavone, USAF.

*For Appellee:* Colonel Shaun S. Speranza, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, MINK, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

At Appellant's original trial, a general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] The court-martial sentenced Appellant to a bad-conduct discharge and reduction to the grade of E-3. The convening authority approved the adjudged sentence.

Upon our initial review, this court affirmed the findings and sentence. *United States v. Robertson*, 77 M.J. 518 (A.F. Ct. Crim. App. 2017), *rev'd*, 77 M.J. 365 (C.A.A.F. 2018). The United States Court of Appeals for the Armed Forces (CAAF) granted review and reversed that decision in light of *United States v. Guardado*, 77 M.J. 90, 93 (C.A.A.F. 2017), setting aside the findings of guilty and the sentence. *United States v. Robertson*, 77 M.J. 365 (C.A.A.F. 2018). The CAAF returned the record to The Judge Advocate General and authorized a rehearing. *Id.*

A rehearing took place on 11–18 September 2018. Another panel of officer and enlisted members convicted Appellant of the Charge and Specification for a second time. The court-martial adjudged a sentence of confinement for six months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority deferred the execution of the sentence to confinement, forfeitures, and reduction below the grade of E-3 until action. In light of Appellant's previously adjudged and approved sentence, and in accordance with the advice of his staff judge advocate, the convening authority approved only so much of the sentence as provided for reduction to the grade of E-3.

Appellant now raises three issues on appeal: (1) whether the military judge erred by admitting evidence of the conduct of which Appellant had been acquitted at his original trial; (2) whether the military judged erred by instructing the members to apply a mens rea of negligence rather than recklessness to the question of reasonable mistake of fact as to consent; and (3) whether senior trial counsel's closing argument improperly commented on Appellant's right to remain silent. We have carefully considered issue (2), and find it does not require discussion or warrant relief.[3] With respect to the remaining issues, we

---

[1] Unless otherwise noted, references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2012 ed.). Unless otherwise noted, all other references to the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The court-martial found Appellant not guilty of two specifications of rape and one specification of abusive sexual contact in violation of Article 120, UCMJ.

[3] In light of *United States v. McDonald*, 78 M.J. 376 (C.A.A.F. 2019), this court has previously resolved this issue contrary to Appellant's position. *See United States v. Lee*,

find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In 2008, AO[4] arrived at Offutt Air Force Base (AFB), Nebraska, where she was assigned to an aircraft maintenance unit. AO became part of a close-knit group of maintainers, including Appellant, who spent a considerable amount of time together off-duty. The group would eat, drink alcohol, play games, listen to music, watch movies, and generally "hang out," particularly at an off-base house Appellant shared with another member of the group, Staff Sergeant (SSgt) MM.[5]

Although AO was the only female member of the core group of friends, she was treated and behaved as "one of the guys." Crude references to male and female genitalia and other sexual banter were common within the group. On one occasion, in the presence of other friends, AO repeatedly asked Appellant to show his penis to her.

Beginning in approximately August 2010, while AO was going through a divorce with her then-husband, for about six months AO lived in the house Appellant and SSgt MM shared. AO and Appellant did not have a sexual relationship. AO considered Appellant a very close friend, like one of her brothers. However, on one occasion, when SSgt MM was away on temporary duty, AO decided to lie down on SSgt MM's bed to sleep, instead of in her own room. Appellant got in the bed and began "cuddling behind" her. AO thought Appellant was "just being stupid" and told him to stop. Appellant responded, "[j]ust let it happen." AO told Appellant he was being "ridiculous" and told him to leave, which he did. AO thought the incident was "funny," and the next morning she told their friends about it.

In 2012, AO began dating one of Appellant's co-workers, Technical Sergeant (TSgt) JS.[6]

---

No. ACM 39531 (f rev), 2020 CCA LEXIS 61, at *19–22 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.). We continue to adhere to our reasoning in *Lee.*

[4] AO was formerly a staff sergeant in the Air Force before she separated from the service after Appellant's first court-martial.

[5] SSgt MM was a second lieutenant at the time of the rehearing. For clarity, this opinion will refer to him by the rank he held at the time of the events that were the subject of Appellant's trial.

[6] TSgt JS was a SSgt in 2012.

In the fall of 2012, Appellant travelled to Kadena Air Base (AB), Japan, for three months as part of a routine unit deployment. In December 2012, AO also traveled to Kadena AB for a deployment that overlapped Appellant's deployment by two or three days. On the night she arrived, AO attended an all-night party with numerous other members of the unit, including Appellant. The party was held in a billeting room in the same building where AO was staying. At one point, Appellant asked AO for her room key so that he could sleep in her room because his room was in another building significantly further away. AO did not consider this to be a strange request, because they had shared a house, a room, and even a bed before. AO declined to let Appellant keep her key, but she let him use it to get into her room so he could sleep there. AO remained at the party.

Later AO returned to her room to get dressed for an in-processing appointment she had to attend that morning. Another member of the unit, SSgt RS, went with her and unsuccessfully attempted to awaken Appellant, who was still there. AO changed into her uniform in the bathroom while SSgt RS waited at the door, and then she departed for her appointment.

When AO returned to the room alone several hours later, Appellant was still sleeping on the bed. AO was very tired and wanted to sleep. She went into the bathroom, changed out of her uniform into a t-shirt and gym shorts, laid down on the edge of the bed facing away from Appellant, and fell asleep.

AO testified that the next thing she remembered was that her shorts were off and Appellant was "cuddled up right next to [her] back." She could feel Appellant's erect penis on her back. AO pretended to be asleep in the hope that Appellant would leave her alone; however, he began to caress her sides and stomach. When Appellant reached towards her vagina, she knocked his hand away and asked him what he was doing. Appellant pulled AO's arm behind her and put her hand on his penis. Although AO repeatedly told Appellant to stop, and repeatedly asked him to think about her boyfriend TSgt JS and about Appellant's girlfriend at the time, Appellant became more aggressive. Appellant inserted his finger in AO's vagina, to which AO responded by thrashing her hips and elbowing him. Appellant shifted positions and repeatedly attempted to penetrate her vagina with his penis as AO struggled against him. AO locked her legs together and Appellant was only able to insert the tip of his penis. AO testified Appellant then "flipped" her over on her stomach, placed his knee on her in the area of her waist or hips, and began to masturbate as he grabbed her buttocks and tried to grab her breasts. Appellant then flipped AO onto her back and straddled her with his knees on her arms. Appellant continued to masturbate and grab AO's breasts until he ejaculated on her stomach. He then got up, retrieved a washcloth from the bathroom, and placed it on AO's stomach. AO told Appellant to leave and then locked herself in the bathroom.

AO testified she remained in the bathroom for approximately 45 minutes, scrubbing her stomach in the shower. When she emerged, Appellant was gone. Shortly thereafter, AO contacted her boyfriend, TSgt JS, by video call and told him what happened. She also called her mother and informed her parents. At some point, AO noticed Appellant had left a note which read "Don't be mad," and either "Let's do lunch" or "Let's do dinner." During a video call, she showed the note to TSgt JS, who recognized the handwriting. AO also showed TSgt JS the washcloth Appellant had given her.

Later on the same day of the assault, AO received a series of messages from Appellant via Facebook which read: "hungry? [I] think we are goin to cocos,"[7] "??," and "u mad at me?" AO did not respond and never directly spoke to Appellant again. Appellant departed Kadena AB within a few days; on the day he left, AO made a restricted sexual assault report to the Kadena AB Sexual Assault Response Coordinator.

AO also informed two of their mutual friends, SSgt MM and WL,[8] of the incident shortly after it occurred. AO "made them swear" they would not tell anyone. However, WL and SSgt MM confronted Appellant soon after he returned to Offutt AFB from the deployment. When they met, Appellant appeared to SSgt MM to be "really nervous, agitated," and "[a] little uncomfortable," in contrast to his usual "very cheerful" and "easygoing" demeanor. Appellant related a version of events similar to what AO had told SSgt MM and WL. According to WL's subsequent testimony, Appellant told them that AO "was saying no to having sex" but Appellant "admitted to grabbing her breast and jacking off on her." However, in Appellant's version, the encounter was consensual, and he never "forced [AO] to do anything" or "pinned her arms down." Neither SSgt MM nor WL reported the incident at that time, but both essentially cut off their relationship with Appellant after this confrontation.

Appellant subsequently sent WL a text message[9] which resulted in the following exchange:

> [Appellant:] [WL] im sry that u have to deal w all this. I apoligize a million times and for you to have to lie to [Appellant's girlfriend] is unacceptable. I know u hate me right now but I just hope u can forgive me for what ive done wrong.

---

[7] Elsewhere in her testimony, AO explained that "Coco's" is a popular restaurant near Kadena AB.

[8] WL was an Air Force master sergeant in 2012, but was retired from the Air Force at the time of Appellant's rehearing.

[9] The text messages appear in their original form, without correction.

[WL:] I don't hate you. Just really disappointed and I hate the situation.

[Appellant:] I def hate it as well and understand why u r disappointed. I truly am sry . . . .

In May 2013, TSgt JS told AO that Appellant had briefly spoken to him on duty without mentioning the Kadena AB incident. AO then sent the following text message to Appellant and received the following response:

[AO:] I never intended to speak to you after that first night in Kadena when you took so much away from me, but I feel like you have left me with no choice. I am at a loss for words that you, someone I considered to be like a brother to me and one of my closest friends, can't even act like a decent human being and leave my loved ones alone. You have no right to so much as look at [TSgt JS], let alone say "hello" or try to talk about ANYTHING besides how sorry YOU are for doing what YOU did to me, him and the rest of our friends. We have all been hurt from what YOU have done. The fact that you have decided that you can go on with your life pretending that nothing has happened disgusts me. Just seeing your face or hearing the sound of your voice makes me sick to my stomach. I have struggled to understand what YOU have done to me for the last 5+ months. You and I both know what happened that day, and we both know that YOU threw away an amazing friendship for disgusting and UNWANTED sexual gratification. You have degraded me enough, you don't need to continue to degrade me anymore. Leave [TSgt JS] and I alone. You don't need to look at us, speak to us or even to acknowledge or presence.

[Appellant:] there is no excuse for my actions and [I] fully respect what you are saying and [I] will avoid all contact with you. [I]m terribly sorry for what happened and obviously wish [I] could take that day back. [Y]ou were family to me and [I] crossed the line. [T]his is the last you will here from me[.]

AO and TSgt JS ended their relationship in October or November 2013. In May 2014, AO made an unrestricted sexual assault report. Afterwards, she obtained a reassignment to another base.

Appellant was originally charged with one specification of rape by digitally penetrating AO's vagina by unlawful force, one specification of rape by penetrating her vulva with his penis by unlawful force, one specification of abusive sexual contact by forcing her hand onto his penis, and one specification of abusive sexual contact by touching her buttocks and breasts, all in violation of

Article 120, UCMJ, and all arising from the December 2012 incident in AO's billeting room at Kadena AB. Appellant's first court-martial found Appellant guilty of the last of these specifications and not guilty of the others.

## II. DISCUSSION

### A. Uncharged Misconduct

#### 1. Additional Background

Before trial, the Government provided notice to the Defense that, pursuant to Mil. R. Evid. 413, it intended to present certain evidence that Appellant committed certain "other [uncharged] sexual offenses" in Appellant's rehearing. This evidence included, *inter alia*, AO's expected testimony that Appellant placed AO's hand on his penis, digitally penetrated AO's vulva, and penetrated AO's vulva with his penis—the acts for which Appellant had been charged and found not guilty in his first trial.

In response, the Defense submitted a timely motion in limine to exclude this evidence. The Defense argued, *inter alia*, that it would be fundamentally unfair to permit the Government to use this evidence of now-uncharged acts to demonstrate propensity pursuant to Mil. R. Evid. 413, when the erroneous use of this same evidence for propensity purposes pursuant to Mil. R. Evid. 413 in Appellant's first trial caused CAAF to overturn his original conviction. *See Robertson*, 77 M.J. at 365. The Defense also argued the Government was barred from using this evidence because Appellant's first court-martial had found him not guilty of these alleged acts of sexual assault.

At a hearing on the motion, the Government clarified its position regarding this evidence. Trial counsel explained the Government was no longer seeking to introduce AO's testimony regarding Appellant's other sexual contact and sexual acts pursuant to Mil. R. Evid. 413, but was instead offering it as "facts and circumstances" of the charged offense of abusive sexual contact by touching AO's breasts and buttocks, because it was "all one factual transaction." In response, although the Government no longer sought to use this testimony as evidence of Appellant's propensity to commit sexual assault, the Defense continued to oppose its introduction on the basis that his prior acquittals precluded the issue of whether he committed these acts.

In an oral ruling, the military judge denied the defense motion in limine. He cited the decisions in *United States v. Solomon*, 72 M.J. 176 (C.A.A.F. 2013), and *United States v. Cuellar*, 27 M.J. 50 (C.M.A. 1988), for the principle that evidence of misconduct for which an accused was previously charged and acquitted may nevertheless be used for propensity purposes in a subsequent prosecution pursuant to Mil. R. Evid. 413, as well as other relevant purposes pursuant to Mil. R. Evid. 404(b), "as long as the military judge does a proper

analysis." He explained, "[t]he issue before the court, then, is whether this evidence is admissible for a proper purpose and the probative value is not substantially outweighed by the danger of unfair prejudice." The military judge then applied the three-part analysis for the admissibility of evidence under Mil. R. Evid. 404(b) set forth in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). He noted the nature of the evidence that Appellant committed the uncharged acts—AO's testimony—was similar to the evidence that would be provided with regard to the alleged offense. The military judge further found the evidence was relevant for non-propensity purposes, specifically "to show the inter-related facts and circumstances of the alleged incident, or *res gestae*," as well as "that the charged touching was done with the intent to gratify [Appellant's] sexual desire." In addition, the military judge further found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. He found the danger of prejudice was low, in light of anticipated appropriate instructions to the court members; moreover, the fact that AO would provide the testimony of these acts that "occur[ed] at the same time" as the charged offense would "not result in a mini trial or a waste of the court's time." Finally, the military judge explained, "permitting [AO] to testify . . . about what occurred during and immediately around the charged incident will permit the members to more accurately evaluate her credibility and ability to accurately remember and recall that evening."

During findings, AO testified regarding Appellant's charged and uncharged acts during the incident as described in the Background section above. The military judge's instructions to the court members on findings included, *inter alia*, the following:

> You have also heard testimony that, immediately prior to this alleged incident, [Appellant] made [AO] place [her] hand on [Appellant's] penis, digitally penetrated her vulva, and penetrated her vulva with his penis, as well as testimony that during or after the alleged incident [Appellant] ejaculated on [AO's] stomach.

> You may consider this testimony for the limited purpose of its tendency, if any, to evaluate the witness' ability to perceive and accurately recall what occurred during the charged offense, the accused's intent to gratify his sexual desires as to the charged offense, and whether the government has proven beyond a reasonable doubt that [Appellant] did not have a reasonable mistake of fact as to consent as to the charged offense.

> In providing you this instruction, I remind you that the only charge before you in this rehearing involves an allegation that [Appellant] committed a sexual contact by touching [AO's]

8

breasts and buttocks. Whether any other uncharged contacts constitute a criminal offense is not a matter before you in this rehearing.

At the prior trial, the members found that the government had not proved, beyond a reasonable doubt, that [Appellant's] purported digital penetration of [AO's] vulva constituted a criminal offense, that his causing her to place her hand on his penis constituted a criminal offense, and that his purported penetration of her vulva with his penis constituted a criminal offense. It is not known and you need not speculate the rationale for these findings. You had the opportunity to personally assess [AO's] credibility as she testified regarding these matters. For all these reasons, you may not consider the testimony regarding these uncharged incidents for any purpose other than the limited purposes I have previously described, and you may not conclude from this testimony that [Appellant] is a bad person or has general criminal tendencies and that [Appellant] therefore committed the offense charged.

Both before and after the military judge delivered this instruction to the members, senior defense counsel told the military judge the Defense did not object to it, nor did the Defense request an additional instruction.

### 2. Law

"The standard of review for a military judge's decision to admit evidence is abuse of discretion." *United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017) (citing *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). The question of whether a prosecution violates the Double Jeopardy Clause of the Fifth Amendment[10] or the doctrine of issue preclusion is an issue of law we review de novo. *United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019) (citations omitted).

A military judge may exclude otherwise admissible relevant evidence if its probative value is substantially outweighed by a countervailing danger, including but not limited to unfair prejudice to a party or confusion of the issues. Mil. R. Evid. 403.

---

[10] U.S. CONST. amend. V.

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive, intent, or absence of mistake. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) does the evidence "reasonably support a finding" that the accused committed the prior crime, wrong, or act; (2) what "fact of . . . consequence is made more or less probable" by the proffered evidence; and (3) is the "probative value . . . substantially outweighed by the danger of unfair prejudice?" *Reynolds*, 29 M.J. at 109 (internal quotation marks and citations omitted). Upon defense request, the Government must "provide reasonable notice of the general nature of any such evidence" it intends to offer, either before trial or—if the military judge excuses the lack of pretrial notice for good cause—during trial. Mil. R. Evid. 404(b)(2).

Regarding uncharged acts of misconduct, our predecessor court explained:

> Facts and circumstances surrounding an offense are always admissible, whether or not they fall into the category of uncharged misconduct. This type of evidence often has been termed "res gestae." It includes conduct, or misconduct not charged, which is admissible because it is so closely intertwined with the offense charged as to be part and parcel of that offense. . . . Evidence of "res gestae" is always admissible both on the merits and during presentencing proceedings regardless of the plea, subject only to the balancing test prescribed by Mil. R. Evid. 403.

*United States v. Keith*, 17 M.J. 1078, 1079–80 (A.F.C.M.R. 1984) (citation omitted); *see also United States v. Thomas*, 11 M.J. 388, 392–93 (C.M.A. 1981) (holding admission of uncharged *res gestae* acts "can be justified in terms of preventing a gap in the narrative of occurrences"). "*Res gestae* evidence is vitally important in many trials. . . . It enables the factfinder to see the full picture so that the evidence will not be confusing and prevents gaps in a narrative of occurrences which might induce unwarranted speculation . . . ." *United States v. Metz*, 34 M.J. 349, 351 (C.M.A. 1992) (citations omitted).

Mil. R. Evid. 413 provides that "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Mil. R. Evid. 413(a). "This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault." *United States v. Hills*, 75

M.J. 350, 354 (C.A.A.F. 2016) (citing *United States v. James*, 63 M.J. 217, 220–22 (C.A.A.F. 2006)). However, in *Hills*, the CAAF held that evidence of the accused's commission of a sexual assault may not be used in this way if that alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. *Id.* at 356; *see also Guardado*, 77 M.J. at 93; *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017).

The Double Jeopardy Clause of the Fifth Amendment "embodies" the principle of "issue preclusion"—"'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Hutchins*, 78 M.J. at 444 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). "An ultimate fact is an issue that was 'necessary to the [initial] judgment.'" *Id.* (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)) (alteration in original). "A 'determination ranks as necessary . . . only when the final outcome hinge[d] on it.'" *Id.* (quoting *Bobby*, 556 U.S. at 835) (alterations in original). The appellant bears the burden to demonstrate that litigation of an issue was foreclosed by a prior proceeding. *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 350–51 (1990)).

### 3. Analysis

Appellant contends the military judge erred in multiple respects in admitting AO's testimony regarding the acts for which he was previously charged and acquitted. We consider each argument in turn.

#### a. Notice

Appellant notes the Government did not refer to Mil. R. Evid. 404(b) in its pretrial notice regarding Mil. R. Evid. 413 evidence, and even at trial cited "facts and circumstances" rather than Mil. R. Evid. 404(b) as the basis for admissibility. Appellant acknowledges the military judge applied the *Reynolds* test to this evidence, but he contends the military judge "failed to specify a Mil. R. Evid. 404(b) purpose for which the evidence was being admitted." As a result, he argues, "for the entirety of the government's case, the defense did not know how the members would be instructed that they could use such evidence." We are not persuaded by Appellant's arguments regarding a lack of notice.

First, to the extent Appellant specifically contends the military judge erred by instructing the members they could consider this evidence with regard to AO's ability to perceive and recall the events, Appellant's intent to gratify his sexual desires, and whether Appellant had a reasonable mistake of fact as to consent, the Defense waived any objection to these instructions.[11] Both before

---

[11] Of course, we do not find his waiver with regard to these specific instructions waived his initial objections to the evidence itself.

and after the military judge delivered these instructions, senior defense counsel informed the military judge the Defense had no objection. In *United States v. Davis*, the CAAF held that "'expressly and unequivocally acquiescing' to the military judge's instructions . . . waive[s] all objections to the instructions." 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Smith*, 9 C.M.R. 70, 72 (C.M.A. 1953)) (additional citation omitted). In this respect, Appellant's case is not materially distinguishable from *Davis*, which we find to be controlling.

Second, Mil. R. Evid. 404(b)(2) requires the Government to provide "reasonable notice of the general nature of any such evidence . . . ." In this case, the Government did provide notice of the "general nature of [the] evidence" it sought to introduce, specifically AO's testimony regarding Appellant's acts immediately prior to the charged abusive sexual contact on her breasts and buttocks, albeit included in a Mil. R. Evid. 413 notice rather than a Mil. R. Evid. 404(b) notice. Moreover, evidence admitted pursuant to Mil. R. Evid. 413 "may be considered on any matter to which it is relevant," including not only propensity to commit sexual offenses but also—when relevant—a witness's ability to perceive and recall, the accused's intent, and the existence of a reasonable mistake of fact. Accordingly, we are not persuaded the Defense was prejudiced by a lack of pretrial notice that the Government would seek to admit this evidence, to use for any or all of these purposes.

Third, Appellant's argument that he lacked notice as to how the military judge would instruct the members on the specific uses of this evidence is without merit. In ruling on the motion, the military judge specifically referred to the evidence's relevance to both Appellant's intent to gratify his sexual desire and to AO's credibility and ability to accurately remember and recall that evening. He also found the evidence to be *res gestae*—that is, "part and parcel" of the offense. *See Keith*, 17 M.J. at 1079–80. The predecessor of our superior court indicated that *res gestae* evidence is so manifestly relevant as to require no specific instructions to guide the court members' use of it. *Thomas*, 11 M.J. at 392 (citations omitted). In a similar vein, AO's testimony that Appellant forced her hand onto his penis and penetrated her vulva with his finger and penis, despite her protests and resistance, was so obviously relevant to the existence of any mistake of fact as to consent to the charged offense that the Defense cannot have been surprised it might be used for such a purpose. Thus it is no surprise the Defense did not object to the instruction, as described above.

### b. Issue Preclusion

Appellant next argues that his prior acquittals precluded the Government from introducing AO's testimony regarding the previously charged acts. Appellant focuses on the military judge's belief that the prior court-martial might have concluded Appellant committed the acts AO described, but found him not guilty due to a reasonable mistake of fact as to consent. Appellant correctly

notes that at the original trial, the court members were not instructed on mistake of fact as to consent with regard to the alleged offenses for which he was acquitted. Because they were not so instructed, it is unlikely mistake of fact as to consent was the basis for Appellant's earlier acquittals. Therefore, Appellant reasons that, contrary to the military judge's suppositions, his prior acquittals must have been based on the first court-martial's conclusion that he did not commit the alleged acts, and therefore the Government could not relitigate those alleged acts in the second trial. Nevertheless, this evidence was not precluded by the results of the original trial.

In addition to hypothesizing about possible rationales for Appellant's acquittal at the first trial, the military judge also relied on precedent from our superior court indicating that conduct that was the subject of a prior acquittal might be admissible in a subsequent trial for a different offense, provided it is relevant and the military judge performs an appropriate Mil. R. Evid. 403 analysis. *See Solomon*, 72 M.J. at 181–82. He also cited our sister court's unpublished opinion in *United States v. Hutchins*, No. 200800393, 2018 CCA LEXIS 31 (N.M. Ct. Crim. App. 29 Jan. 2018), *aff'd*, 78 M.J. 437 (C.A.A.F. 2019) (unpub. op.), as "persuasive." In *Hutchins*, the court explained that the admissibility in a court-martial of evidence that was the subject of an offense charged at a prior court-martial, for which the accused was acquitted, is governed not by the doctrine of issue preclusion, but by Mil. R. Evid. 401, 403, 404(b), and the *Reynolds* test. *Hutchins*, unpub. op. at \*16–18 (citations omitted). The CAAF affirmed and explained:

> [A] military judge may admit "otherwise admissible evidence even though it was previously introduced on charges of which an accused has been acquitted" as long as "the evidence is relevant" and "the probative value of the proffered evidence is [not] outweighed by its prejudicial effect." . . . "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof" such as in an M.R.E. 404(b) context.

*Hutchins*, 78 M.J. at 445 (quoting *Dowling v. United States*, 493 U.S. 342, 349 (1990); *Cuellar*, 27 M.J. at 54) (second alteration in original) (additional citation omitted).[12] Therefore, regardless of any misconceptions on the military judge's part regarding possible rationales for Appellant's prior acquittals, he appropriately concluded that AO's testimony regarding Appellant's actions immediately prior to the charged offense was not precluded from admission.

---

[12] The CAAF issued its opinion in *Hutchins* after Appellant's rehearing.

Appellant's argument that "[t]he only rationale for the findings of the original panel is that the government did not prove that the physical acts described . . . actually occurred" misses the point. The admissibility of evidence pursuant to Mil. R. Evid. 404(b) is not governed by a standard of proof beyond a reasonable doubt. Appellant was not re-charged with the previously litigated offenses, and the court members at the subsequent trial were not called upon to determine his guilt beyond a reasonable doubt with respect to those acts. Therefore, the prior acquittals under a beyond reasonable doubt standard did not preclude use of this testimony at the subsequent trial pursuant to Mil. R. Evid. 404(b).

### c. Mil. R. Evid. 403

Finally, Appellant contends the military judge erred in balancing the probative value of the evidence against the dangers of unfair prejudice. He argues the uncharged misconduct was much more serious than the charged offense. Appellant further argues the military judge could have reduced the unfair prejudice by limiting AO's testimony to something less than full-blown descriptions of forcible rape, but the military judge failed to do so.

Where a military judge conducts a proper balancing test under Mil. R. Evid. 403 on the record, an appellate court will not overturn the ruling absent a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation omitted). In this case, the military judge clearly articulated his reasoning, and we find his application of the law to the facts was not clearly unreasonable. *See Ellis*, 68 M.J. at 344 (citation omitted). He found that the danger of unfair prejudice was low, considering that he would provide an appropriate instruction. He in fact gave such an instruction, which identified specific, non-propensity uses for AO's testimony, forbid its use as propensity evidence, and informed the members that Appellant previously had been found not guilty for any criminal offense with respect to these acts. In addition to the relevant uses the military judge specified in his Mil. R. Evid. 403 ruling, we note this evidence had high probative value as *res gestae* with the charged offense. It would be difficult for the members to comprehend the context for AO's testimony regarding the charged abusive sexual contact on her breasts and buttocks without her testimony of Appellant's various actions, and her reactions, that immediately preceded it. Moreover, the military judge reasonably found the testimony would not result in a waste of time or a distracting "mini-trial" on a collateral matter.

Given the military judge's analysis, and in light of our presumption in the absence of evidence to the contrary that court members follow the military judge's limiting instructions, *see United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted), we find the military judge did not clearly abuse his discretion with respect to his Mil. R. Evid. 403 analysis of AO's testimony.

**B. Improper Argument**

**1. Additional Background**

During group voir dire of the court members, trial defense counsel confirmed that each court member understood that Appellant had "an absolute right to remain silent," and that if Appellant chose to exercise that right, they could not hold that against him.

The Government called several witnesses to testify during the findings phase of the trial, including: AO, the victim; TSgt JS, her boyfriend at the time; the victim's mother; and SSgt MM and WL, the friends who confronted Appellant upon his return to Offutt AFB. In its findings case, the Defense also called several witnesses, including *inter alia* two other individuals who were on the deployment who testified AO seemed "normal" when they saw her after the alleged offense, and several who testified to their personal opinions that AO had an untruthful character and/or her reputation for having an untruthful character. The Defense also introduced the prior testimony of two defense witnesses from the original trial regarding AO's character for untruthfulness.[13]

During his closing argument on findings, trial counsel stated the following:

> It was a traumatic experience. And you have to weigh the credibility of *the witnesses that you heard from*, the tenor of her voice, how upset she got when she's talking about this. That's not control. You heard her mom sit up here and tell you what it was like, and you watched her face buckle when she told you that [AO] told her she squeezed her legs tight so that he couldn't get in. That is a visceral reaction and you can't fake it. And you saw [TSgt JS] up here, nervous, upset, because it upset him because he got that phone call and he had to process it. You have to weigh that against a couple of [Appellant's] buddies that weren't in that room, *and weigh that against a guy that you never heard from*. You've got to judge and consider their intelligence, their sincerity, their prejudices. Think about the questions asked back and forth, and think about their bias. Yeah, they don't like it, they're not friends with her, they got his back. It doesn't make her a liar.

(Emphasis added). Trial defense counsel did not object to this argument, and the military judge did not intercede *sua sponte*.

---

[13] In addition, the Defense briefly recalled TSgt JS to clarify that he had been in contact with AO's mother while AO was at Kadena AB, and called the former Sexual Assault Response Coordinator at Kadena AB to testify regarding evidence procedures.

The military judge's instructions to the court members on findings included the following: "The accused has an absolute right to remain silent. You will not draw any inference adverse to the accused from the fact that the accused did not testify as a witness. The fact that the accused has not testified must be disregarded by you."

**2. Law**

Whether a trial counsel's comments in closing argument improperly referenced an accused's constitutional right to remain silent is a question of law we review de novo. *See United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011) (citing *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007)). "When no objection is made during the court-martial, a counsel's arguments are reviewed for plain error." *Id.* (citing *United States v. Schroder*, 65 M.J. 49, 57–58 (C.A.A.F. 2007)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)). The burden is on Appellant to show that there was error and that the error was plain. *United States v. Carter*, 61 M.J. 30, 34 (C.A.A.F. 2005) (citation omitted). However, "[r]egardless of whether there was an objection or not, '[i]n the context of a constitutional error, the burden is on the Government to establish that the comments were harmless beyond a reasonable doubt.'" *Flores*, 69 M.J. at 369 (quoting *Carter*, 61 M.J. at 35); *see also United States v. Tovarchavez*, 78 M.J. 458, 463 (C.A.A.F. 2019) (citations omitted) (explaining that material prejudice for forfeited constitutional errors is assessed for harmlessness beyond a reasonable doubt).

"It is black letter law that a trial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense." *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A. 1990) (citing *Griffin v. California*, 380 U.S. 609 (1965)). However, a "prosecutorial comment must be examined in light of its context within the entire court-martial." *Carter*, 61 M.J. at 33 (citation omitted). Improper comments that are "isolated" or a "slip of the tongue" may be evaluated differently than comments that are repeated so as to become "a centerpiece of the closing argument." *Id.* at 34 (citations omitted). "[W]hether [an] error is harmless beyond a reasonable doubt 'will depend on whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction.'" *United States v. Paige*, 67 M.J. 442, 451 (C.A.A.F. 2009) (quoting *Moran*, 65 M.J. at 187). To find that an error did not contribute to the conviction is "to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Moran*, 65 M.J. at 187 (citation omitted).

### 3. Analysis

Because the Defense did not object to trial counsel's argument, we review for plain error. *See Flores*, 69 M.J. at 369 (citation omitted). Appellant contends the italicized portion of trial counsel's argument quoted above was a plainly erroneous impermissible comment on Appellant's exercise of his right not to testify. The Government concedes trial counsel's reference to "a guy that you never heard from" is "probably error." However, the Government contends that because the comment was "fleeting" and "neither the military judge nor the trial defense counsel paid the remotest attention to it," the error was not "plain or obvious."

We conclude the comment is a plain and obvious error. However fleeting, trial counsel's comment apparently refers to Appellant and to the fact that Appellant did not testify. Such arguments are generally impermissible, and this is not a situation where the reference was "tailored" in response to a specific defense theory or argument. *See Carter*, 61 M.J. at 34 (citations omitted).

Having found that Appellant has met his burden to demonstrate a plain error with regard to a constitutional right, we must determine whether the error was harmless beyond a reasonable doubt. *See Flores*, 69 M.J. at 369 (citation omitted). Under the particular circumstances of this case, for several reasons we conclude that it was.

First, the comment was brief and isolated. Trial counsel made only one such reference over the course of his initial and rebuttal closing arguments that spanned 21 pages in the transcript of the record of trial. Moreover, even in the single paragraph where the comment occurred, neither Appellant nor his failure to testify was the focus of trial counsel's argument. Instead, it is evident trial counsel was focused on the relative credibility of the witnesses who did testify, including the defense witnesses.

Second, the military judge's clear instruction that the members were to disregard the fact that Appellant did not testify, delivered after trial counsel's argument, ameliorates the error to an extent. Court members are presumed to follow a military judge's instructions in the absence of evidence to the contrary. *See Taylor*, 53 M.J. at 198 (citations omitted). In this case, the fleeting nature of the improper comment and the absence of other circumstances indicating the members might have failed to heed the instruction allay our concern that the instruction may have been disregarded. Moreover, the Defense's voir dire questions which confirmed the court members' appreciation of this very point, and inoculated the members from drawing any adverse inference from Appellant's decision not to testify, reinforced the instruction. Although we do not hold or believe that such an instruction will inevitably counteract an improper argument, under the circumstances and in combination with other factors in

this case, we conclude the instruction had a real tendency to avert unfair prejudice to Appellant.

Third, the strength of the Government's case tended to render trial counsel's comment "unimportant in relation to everything else the [members] considered" with respect to Appellant's guilt. *Moran*, 65 M.J. at 187 (citation omitted). AO's testimony regarding the offense was clear and reinforced by other evidence presented to the members. TSgt JS, AO's mother, SSgt MM, and WL all confirmed AO reported the incident to them shortly after it occurred. TSgt JS testified he saw, by video, bruises on AO's wrist and hip after the incident, as well as the note Appellant left in AO's room asking her not to "be mad." Even more significantly, when SSgt MM and WL confronted Appellant after he returned from Kadena AB, Appellant significantly corroborated AO's account, to include that AO did not want to have sex, that Appellant grabbed her breast, and that Appellant ejaculated on her. In addition, Appellant's response to AO's lengthy and accusatory text message in May 2013 stated he was "terribly sorry" and had "no excuse," and did not challenge her assertions that his actions were "unwanted" and "degrad[ing]" to AO, nor the implication that he was solely responsible for the incident.

To reiterate, trial counsel's reference to Appellant as "a guy you never heard from" was improper and clearly erroneous. Trial counsel should not have said it; when he did, trial defense counsel ought to have objected, and the military judge ought to have intervened. *See United States v. Andrews*, 77 M.J. 393, 403–04 (C.A.A.F. 2018) (explaining the military judge has a "*sua sponte* duty to insure [sic] that an accused receives a fair trial" and trial defense counsel "owes a duty to the client to object to improper arguments"). However, the very brevity and isolation of the transgression tend to explain why they did not do so. *See United States v. Nelson*, 1 M.J. 235, 239 n.6 (C.M.A. 1975) (citations omitted) ("The absence of defense objection is, itself, some measure of the minimal impact the prosecutor's remark had on the jury."). Although we do not condone trial counsel's remark, under the circumstances of this case we are convinced beyond a reasonable doubt that this single comment did not contribute to Appellant's conviction.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court